13668

HATCHELL *ET AL.* v. NORTON *ET AL.*

(170 S. E., 341)

*Messrs. Baker & Baker,* for appellants,

*Mr. J. Graham Rose,* for respondents,

July 17, 1933.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, according to the agreed statement of counsel appearing in the transcript of record, was commenced by the service of the summons and complaint upon the defendants on December 30, 1930. The plaintiffs prayed that the Court do determine what interest, if any, the defendant Manly Norton, who under a contract between his mother, Leather Norton, and A. H. Turner, on March 6, 1924, was given unto the care, custody, and control of A. H. Turner, upon

conditions set forth in the contract, would have in a tract of land, described in the complaint, which tract of land the plaintiffs herein have contracted to sell to the defendant M. J. Thomas. The tract has been conveyed to M. J. Thomas, partly for cash and the balance being represented by a mortgage which provides that this action would be commenced to protect M. J. Thomas from a claim upon the part of Manly Norton, infant defendant. A. H. Turner on the 11th day of April, 1929, died intestate, leaving the plaintiffs, Beulah Hatchell, Daisy McLaughlin, Maggie Taylor, Minnie Hutchison, Essie McLaughlin, Zellie Ham, and Isabell Hutchison, and B. Lee Turner, children, and his widow, Mrs. Alice Turner, now Mrs. Alice Conner. Mrs. Alice Conner and B. Lee Turner deeded to the plaintiffs herein whatever interest they might have in the tract of land.

At the time of the commencement of this action, a notice was served upon the infant defendant, Manly Norton, for the appointment of a guardian *ad litem*. The late Hon. P. H. Arrowsmith was employed to look after the interest of the infant, Manly Norton, and he served an answer, but did not have a guardian *ad litem* appointed. After the death of Hon. P. H. Arrowsmith, plaintiffs' attorneys served notice upon the infant defendant, on August 17, 1931, to employ other counsel, and that the plaintiffs' attorneys would move for the appointment of a suitable person as guardian *ad litem* for the infant defendant. Manly Norton. On September 1, 1931, Judge S. W. G. Shipp signed an order appointing J. Graham Rose as guardian *ad litem*.

J. Graham Rose, guardian *ad litem,* on December 31, 1931, served an answer to the plaintiffs' complaint, denying such allegations contained in the complaint as set forth that the defendant Manly Norton had no interest in the tract of land.

The defendant M. J. Thomas, through his attorney, answered the complaint, praying that the prayer of the complaint be granted.

On January 5, 1932, Hon. S. W. G. Shipp, Judge of the Twelfth judicial Circuit, referred to the master of Florence County the cause to hear and determine all issues of law and fact. The master in his report recommended that the defendant Manly Norton be decreed to inherit as a child from his adopted father, A. H. Turner. This report was duly excepted to on the 8th day of January, 1932; notice of appeal and exceptions being served upon that date.

After hearing arguments, Judge S. W. G. Shipp, on January 12, 1932, by his decree, affirmed the master's report.

From the said decree of his Honor, Judge Shipp, affirming the master's report, the plaintiffs duly appealed to this Court.

For the purpose of a clear understanding of the issues involved in the case and the conclusion reached by the lower Court, we quote herewith the contract in question, which reads as follows:

"LEATHER NORTON TO A. H. TURNER—
ADOPTION OF CHILD

"State of South Carolina, County of Florence.

"This agreement made the 6th day of March, 1924, by and between Mrs. Leather Norton and A. H. Turner,

"Witnesseth:

"The said Mrs. Leather Norton does hereby solemnly agree to and does deliver her child Manly Norton, age 7 years, the 27th day of September, 1923, into the custody, care and control of the said A. H. Turner, who is to have and hold the said child as his own. And the said Leather Norton does hereby release any and all claims she has on the said child, and agree that she will never in any way interfere with said child. And the said A. H. Turner does hereby solemnly agree to take the said child into his care and custody, to control and at all times to treat him as his own child. He adopts the child with the full and free consent of his mother, the said Mrs. Leather Norton, whose name

is hereto signed. He further agrees to give the said child careful attention, to provide him with all necessary food and clothing and shelter, to give him all the comforts that his means will allow, and to educate him as he is financially able to do. In short, the said A. H. Turner is to give the said child the same attention, care, educational and religious training as if he was his own flesh and blood.

"Witness our hands and seals this 6th day of March, A. D. 1924.

"[Signed]  LEATHER NORTON (L. S.)

"A. H. TURNER (L. S.)

"In the presence of:

"J. V. McELVEEN

"M. A. McINTYRE."

We have in this State a statutory provision governing the adoption of children, which appears in Volume 3, 1932 Code, as Section 8679, and, according to our view, the mode of adoption of a child must be in compliance with the provisions of this section in order for such child to be entitled to inherit as the child or children of the person adopting such child. The contract involved in this case, quoted above, is not a compliance with the provisions of this section of the Code. For that reason we think that the lower Court was in error in holding and decreeing the infant defendant, Manly Norton, to be entitled to inherit as a child from his adopted father, A. H. Turner. The question of compensation for service rendered by the said infant is not before this Court.

The appeal is therefore sustained, and it is the judgment of this Court that the infant defendant, Manly Norton, is not entitled to inherit as a child from his adopted father, A. H. Turner.

MR. CHIEF JUSTICE BLEASE concurs.

MR. JUSTICE BONHAM concurs in result.

MR. JUSTICE STABLER dissents.

MR. JUSTICE BONHAM (concurring) : I concur in the opinion of Mr. Justice Carter, in this case, but it occurs to me that, because of the serious importance of the question involved, it may not be amiss to elaborate the argument somewhat. It is not necessary to report the facts here.

There is no doubt that the view taken by the trial Judge is supported by strong authority, and there is no doubt that the opinion of that distinguished Judge is justly entitled to high consideration. But I think that reason and the majority rule are opposed to it. Moreover, it sets at naught the deliberate action of the legislative power of the State and ignores the statute passed by that body regulating the matter of adoption of children in this State. Its pertinent provisions are thus stated in Section 8679, Vol. 3, Civil Code 1932 : "Any person or persons who may desire to adopt any child or children in this State, and confer upon such child or children so adopted the right to inherit as the lawful child [or children] of the said person or persons, whether it be desired to change the name of such child or children or not, shall be authorized to file his or their petition in the Court of Common Pleas for the county in which he, she or they may reside; and thereupon, the Court, upon an examination into the merits of the said petition, either in open Court or upon reference, shall be authorized to grant the prayer thereof, upon such terms as may to the Court seem proper; and, thereupon, the name of the said child or children shall be changed, if so provided in the decree of said Court, and such child or children shall be entitled to inherit from the said petitioner or petitioners as his, her or their lawful child or children."

The makers of the Constitution of 1895 considered the matter to be of such importance that that instrument, by Section 34 of Article 3, Subd. 5, provided that no special law should be passed by the Legislature for the adoption or legitimizing of any child.

It is conceded that in the case here present for review the statutory provisions for adoption were not obeyed. The writ-

ten agreement between the mother of the child, Manly Norton, and A. H. Turner is to the effect that Turner is *"to have and hold"* the child as his own. (Italics ours.) He (Turner) agrees "to take the child into his care and custody, to control and at all times to treat him as his own child."

He further agrees "to give the said child careful attention, to provide him with all necessary food and clothing and shelter, to give him all the comforts his means will allow, and to educate him as he is financially able to do. In short, the said A. H. Turner is to give the child the same attention, care, educational and religious training as if he were his own flesh and blood."

The language used in this agreement indicates that it was prepared by one who knew the use of the English language, and the meaning and force of words. It is true that the instrument of writings says this: "He adopts the child with the full and free consent of his mother." But nowhere is it provided that the child shall inherit from Turner, and it is significant that his name was not changed from Norton to Turner. The language and provisions of the written agreement are appropriate to the provisions of Sections 7020 and 7021, Civil Code 1932, relating to binding infants to apprenticeship, and even more appropriate to the provisions of Section 8633, Civil Code 1932, the pertinent parts of which are as follows: *"How Custody of Minors May Be Disposed of.*—The father of any child, or children, under the age of twenty-one years, and not married, if the mother be dead, or the mother of any such child, or children, the father being dead, whether such father or mother be under the age of twenty-one years, or of full age, may, by his or her deed, executed and recorded according to law, or by his or her last will and testament, made and probated according to law, dispose of the custody and tuition of such child, or children, for and during such time as he, she, or they, respectively, remain under the age of twenty-one years."

The internal evidence of the transaction discloses that the

mother of Manly Norton and Mr. Turner knew what they wanted, and they employed a person of education and knowledge to put their agreement in writing. If they had intended that Turner should legally adopt the child, they would have put it in legal form. But instead they put it in the form provided by statute for conveying the custody and tuition of the child, and nowhere in the instrument, signed by the mother of the child and by Turner, is there any provision that the child shall inherit from Turner. Nor is there any word of testimony that Turner ever promised that the child should inherit from him. It seems to be admitted that as long as he lived Turner performed every condition of the contract which he obligated himself to perform.

I fear that it would prove to be a dangerous thing to establish by our decision of this case that under conditions similar to those here shown one may come in and inherit from a decedent, not only of his personalty, but of his real estate. The certainty and security of titles would be seriously impaired.

I admit that there is a line of cases which sustain the view taken by the trial Judge, but I am fully persuaded that the more general and reasonable rule is contrary to his view.

The Supreme Court of Illinois in the case of *Watts v. Dull,* reported in 184 Ill., 86, 56 N. E., 303, 305, 75 Am. St. Rep., 141, said: "A child by adoption cannot inherit from the adoptive parent unless the adoption has been had in strict accordance with the statute"—citing *Tyler v. Reynolds,* 53 Iowa, 146, 4 N. W., 902.

In the case of *Furgeson v. Jones,* reported in 17 Or., 204, 20 P., 842, 3 L. R. A., 620, 11 Am. St. Rep., 808, the Supreme Court of Oregon said:

"A child by adoption cannot inherit from the parent by adoption unless the act of adoption has been done in strict accordance with the statute.

"The right of adoption was unknown to the common law, and repugnant to its principles. Such right, being in deroga-

tion of the common law, is a special power conferred by statute, and the rule is that such statutes must be strictly construed."

I need not cite recent decisions of our Court which declare that statutes in derogation of the common law must be strictly construed and strictly complied with.

The following citations from Cyc., set out in appellant's brief, are apt and noteworthy.

From page 919: "A statute providing a mode of adoption by statute implies that it cannot legally be done any other way and in order to effect an adoption there must be a substantial compliance with all the essential requirements of the law under which the right is claimed."

From page 932: "However, as against an adopted child the statute should be strictly construed, because it is in derogation of the general law of inheritance, which is founded on natural relationship and is a rule of succession according to nature which has prevailed from time immemorial. Hence, a child by adoption cannot inherit from the adoptive parents unless the act of adoption has been done in strict accordance with the statute."

The opinion of the Supreme Court of Kentucky in the case of *Davis v. Jones' Adm'r,* 94 Ky., 320, 22 S. W., 331, 42 Am. St. Rep., 360, cited in appellant's brief is illuminating. In that case the decedent contracted with the mother of the child that, in consideration of the surrender by the mother, to him, of the custody, care, and control of the child, he would clothe, support and educate her, and make her his heir at law so that she could inherit all of his estate. This he failed to do, and after his death an action was brought against his estate to enforce the contract. The Court denied the right to enforce such contract, or to sue because of its breach, basing its reason upon the theory that: "Such contracts being unauthorized by the common law, and, as all common contracts in this State are generally either authorized by the common law or by statute, no contract in general

is binding unless it is authorized by the common law or by statute. And, as the same reason exists in this State for forbidding such contracts as exist at common law, they are unauthorized and not binding. *But the legislature of this State has seen proper to authorize certain parties to make persons not related to them their legal heirs upon certain conditions by petition to the county Court having jurisdiction; and it has been settled by this Court that the authority thus given is the only authority existing in this State by which one person can make another his legal heir, and any agreement by one person to make another his legal heir, not in accordance with said statute, is not enforceable * * * and no action will lie for its breach"* (italics added)— citing authorities.

That the rule of exclusive application of statutory provisions above announced prevails in this jurisdiction is evidenced by the opinion in the case of *Haig v. Wateree Power Co.,* 119 S. C., 319, 112 S. E., 55, 57, which was a proceeding in condemnation of lands. The Court said: "This proceeding was brought under authority of Sections 3292-3305, inclusive, Vol. 1, Code of Laws 1912. It is a special statutory proceeding with the right of appeal to the Circuit Court. [*S. C. Western*] *Railway v. Ellen,* 95 S. C., 68, 78 S. E., 963 Ann. Cas., 1915-B, 1042. The rights and remedies granted thereunder are exclusive and must be confined within the limits of the purposes and privileges therein expressed."

The case of *Mahaney v. Carr,* 175 N. Y., 454, 67 N. E., 903, 904, and found in annotation pages 1347, 1348, 27 A. L. R. is especially apt and illuminative of the underlying issue in our case under present review. There a grandfather made a parol contract to take his grandchild, raise her, and give her a child's share of his property; the mother of the child was dead. Subsequently to the agreement, by gifts or otherwise, he disposed of his property. The New York Court, deciding the appeal, said: "The finding of fact described a case, or a transaction that must occur almost every day, or at least is a very common event in the domestic re-

lations, but the learned Courts below have attributed to the facts found legal consequences that are far reaching and of the most momentous importance. It has been held that, from the time that the deceased took this child under the arrangement found, he became disabled from transferring * * * his property, since all such conveyances and transfers, even to his wife, have been held to be null and void as to the plaintiff [the grandchild]. It has been held that the grandfather's will, in which he attempted to dispose of his property for the support and benefit of his widow, is also null and void as to the plaintiff, and generally that the plaintiff, by means of this simple transaction, when she was five years old, secured legal rights against her grandfather and his property that overreach and override all future conveyances, transfers, gifts, or testamentary dispositions of the same by him. From the time that the grandfather took this child into his house his right of future disposition of his property, which all men generally possess, became limited and restricted. These are the conclusions to be deduced from the judgment in this case. And yet no one has attempted, so far as I can see, to classify the transaction described in the finding among the various methods for the transmission or devolution of property. *It certainly is not a testamentary disposition, since that must be in writing, executed with all the statutory formalities. It is not a conveyance or transfer in præsenti of any property whatever. If it had the effect attributed to it by the judgment, it was more potential and effective than any testamentary disposition could be, since such dispositions are always ambulatory and subject to revocation. It was not an executory contract for the future conveyance or transfer of any specific property. It could not take effect until the death of the grandfather, and during his life he was not in default with respect to it; and yet this anomalous arrangement was, according to the judgment in this case, effective enough in law to nullify the gifts and conveyances made by the grandfather in his lifetime to his wife, and the provisions*

*of his will that took effect upon his death. The deceased left three children of his own, that certainly had as strong a natural claim upon his bounty as the plaintiff, his grandchild; but no one, I think, would claim that, had the deceased made the same promise to them that it is found he made to the plaintiff, it would constitute a basis for an action of specific performance against the widow."* (Italics added.)

If Turner in his lifetime had conveyed away his real estate upon valuable consideration, would it be contended that Manly Norton could maintain an action against the purchaser, or an action against the estate of Turner for breach of contract? Or if Turner, instead of dying intestate, had left a will, in due form, and responsive to all statutory requirements relative to its execution, by which he disposed of his real estate without making any provision for Manly Norton, will it be contended that he could set the will aside and maintain an action for a share of the property? I do not think so, but, if the judgment of the lower Court is affirmed, he could maintain such action. Such a conclusion would, in my judgment, be fraught with most serious and dangerous consequences. This boy was cared for by Turner; had, so far as the record shows, a good home and the same treatment and educational and religious training given to Turner's own children. If it be conceded that, if Turner had failed in this respect, the child might have maintained a suit in equity against him to compel Turner to give him such treatment, upon the ground of a valid contract to do so, it does not follow that he could maintain an action for a share in Turner's estate upon the ground that it was his right as an adopted child, although he had not been adopted in the mode prescribed by the statute. I am of the firm opinion that the agreement here presented to us for review is not enforceable in equity to the extent of enabling Manly Norton to inherit from A. H. Turner.

For these reasons I concur in the conclusion reached by Mr. Justice Carter that the judgment before should be reversed.

Mr. Chief Justice Blease concurs.

Mr. Justice Stabler (dissenting) : I think the decree of the Circuit Court should be affirmed. I am satisfied, from my examination of the decisions, that the conclusion reached by Judge Shipp is in accord with the weight of authority. See, especially, *Hickox v. Johnston*, 113 Kan., 99, 213 P., 1060, 27 A. L. R., 1322, and note.