16471

DRIGGERS *ET UX* v. JOLLEY
CHILDREN'S BUREAU v. DRIGGERS *ET AL.*
(64 S. E. (2d) 19)

*Messrs. John M. Daniel, Attorney General,* and *R. Hoke Robinson, Assistant Attorney General,* of Columbia, *for Appellant,*

*Mr. Norval N. Newell,* of Moncks Corner, *for Respondents,*

March 8, 1951.

FISHBURNE, Justice.

This appeal involves the custody of a child and the various procedural steps taken in connection therewith.

On September 27, 1947, Stella Harrison gave birth to an illegitimate son at Oliver Springs, Tennesse, who was given the name Wayne. The mother then moved to Middlesboro, Kentucky, where she married Frank Jolley. At the time of this marriage she was again pregnant with a second child; and in 1949, she gave birth to a third child. Following her marriage, the child, Wayne, became known as Wayne Jolley.

In May, 1949, Mr. and Mrs. Frank Jolley and the child Wayne resided in the Clifton Mill community near the city of Spartanburg. Living near them in the same community were Mr. and Mrs. Lee L. Driggers, who had no children.

On May 10, 1949, Mr. and Mrs. Jolley gave the little boy, Wayne, to Mr. and Mrs. Driggers, freely and of their own accord, with the understanding that he would be adopted by them; they delivered the actual custody and keeping of the child to Mr. and Mrs. Driggers and he has been in their care and possession ever since. On the above mentioned date,— May 10, 1949,—Mr. and Mrs. Driggers, accompained by Mrs. Jolley, filed a petition in the Children's Court of Spartanburg County, requesting the adoption by the Driggers of the child, and that his name be changed to Driggers. Thereafter, on May 18, 1949, Mr. and Mrs. Jolley filed a petition in writing in the same court, relinquishing the custody of the child to Mr. and Mrs. Driggers, and giving their unqualified consent to its adoption by the Driggers.

Some time during the Summer of 1949, about June, Mr. and Mrs. Driggers, to better their condition, moved to Berkeley County, near Summerville, the original home of Mr. Driggers, and took the child, Wayne, with them.

On August 9, 1949, Mr. and Mrs. Jolley filed a petition in the children's court, requesting that their petition of May 18,

1949, consenting to the adoption of Wayne by the Driggers and relinquishing his custody to them,—be withdrawn, because the "petitioners plan to move back to Tennessee and want to take the baby with them," and requesting that custody be restored to them.

Frank Jolley filed another petition in the Children's Court of Spartanburg County on November 1, 1949, praying that the minor, Wayne Jolley, be brought before the court upon the petition signed by Mrs. Driggers on May 10, 1949, and that Mrs. Driggers be summoned to appear in the proceeding. In response to this petition, a summons was served upon Mr. and Mrs. Driggers at their home in Berkeley County; and on November 11, 1949, they filed in the same court a "Withdrawal of Petition," in which they withdrew the petition for the adoption filed by them on May 10, 1949. In this proceeding, Mr. and Mrs. Driggers stated that their original petition for the adoption of Wayne had been filed jointly and concurrently with that of Mr. and Mrs. Frank Jolley consenting to the adoption, and inasmuch as the latter had withdrawn their consent, the Driggers chose to exercise the same right. The Driggers also filed a special appearance in the children's court, in which they took the position that that court no longer had jurisdiction of the matter.

Thereafter, Mr. and Mrs. Jolley signed an instrument intitled "Affidavit", relinquishing all their right to the possession of the little boy, in which it was stated that they surrendered his custody to the Children's Bureau of South Carolina, and requesting supervision of the child by that Bureau throughout his minority.

On October 25, 1949, Mr. and Mrs. Driggers instituted a suit in the Court of Common Pleas for Berkeley County, which had for its purpose the adoption of the infant Wayne under the general law as set forth in Section 8679 of the Code. This is the first case appearing in the caption of this appeal. Thereafter, on March 28, 1950,—five months later,— the Children's Bureau of South Carolina brought suit against

Mr. and Mrs. Driggers in the Court of Common Pleas for Berkeley County, praying for a writ of habeas corpus, in which the Bureau sought to gain the custody of the child, and to restrain further proceedings in the adoption action brought in that court by the Driggers. The Bureau alleged upon information and belief, among other things, that Mr. and Mrs. Driggers were not proper persons to have the custody of the child, and that its interests would be best served by placing its custody and supervision with the Bureau.

By their return to this habeas corpus proceeding, the Driggers denied the legality of the Bureau's claim, alleged their earnest desire to keep and rear the child, and their ability and the suitability of their home for this purpose; and specifically challenged the jurisdiction of the Children's Court of Spartanburg County because of the withdrawal of consent by Mr. and Mrs. Jolley to the adoption proceeding initiated in that court.

The matter came on to be heard in the Circuit Court of Berkeley County, on motion made by Mr. and Mrs. Driggers to combine the habeas corpus proceeding with the adoption proceeding, both of which were pending in that county. This hearing resulted in an order by the court in which it was held that under Code Section 255, the Children's court of Spartanburg County had lost jurisdiction by reason of the withdrawal of consent to adoption by Mr. and Mrs. Jolley; that the habeas corpus proceeding and the adoption action should be consolidated for trial, and that the cause should be referred to a special referee. The court's order also contained the provision that the custody of the minor, Wayne, should remain with Mr. and Mrs. Driggers during the pendency of the litigation.

The first and main question necessary to be considered on this appeal, affects the construction placed by the circuit court on Section 255, subdivision 19, Code of Civil Procedure, Page 118, and its application under the evidence. This Code section reads as follows: "Persons desiring to adopt a minor

may begin proceedings before the judge of the children's court, the parents or guardian or anyone having charge of such child becomes party to the proceeding, and with consent of such, the judge may sanction such adoption if the party seeking it seems suitable, after investigation by probation officer. Petitioner shall give bond for property, if any, in case child is orphan. Child inherits as natural children, and name of child may be changed to that of petitioner if allowed by clerk. Order of adoption may be revoked at any time by judge for cause."

It will be noted that the parent or parents of the child to be adopted becomes a party, or parties, to the adoption proceeding, "and *with consent of such*, the judge may sanction such adoption if the party seeking it seems suitable." (Emphasis added.)

The adoption of a child was a proceeding unknown to the common law. The transfer of the natural right of the parents to their children was against its policy and repugnant to its principles. *Cribbs v. Floyd,* 188 S. C. 443, 199 S. E. 677; *Hatchell v. Norton,* 170 S. C. 272, 170 S. E. 341. It had its origin in the civil law, and exists in this state only by virtue of statutory law, which, as above shown, expressly prescribes the conditions under which adoption may legally be effected in the children's court.

It is generally held that consent lies at the foundation of statutes of adoption, and under our law, Sec. 255, subdivision 19, dealing with adoption proceedings commenced in the Children's Court of Spartanburg County, this consent is made absolutely essential to confer jurisdiction on that court to make an order of adoption. Unless such consent is given, or having been given should later be properly and legally withdrawn, the court has no jurisdiction in the matter. Annotation, Ann. Cas. 1914A, 221; 1 Am. Jur., Secs. 35, 36.

The issue immediately before us for decision is whether the Children's Court of Spartanburg, which has jurisdiction

of adoption proceedings only by consent of the parent or guardian, lost jurisdiction when Mr. and Mrs. Jolley withdrew their consent. The circuit court held that this consent having been withdrawn, the children's court lost jurisdiction of the subject-matter.

The right of a natural parent, or other person whose consent is necessary to the adoption of a child by judicial proceedings, to withdraw a consent previously given, is very fully discussed, with citation of cases, in Annotations, 138 A. L. R. 1038, and 156 A. L. R. 1011. An examination of these authorities shows that the earlier cases support the view that a natural parent's consent to the proposed adoption of a child, duly given in compliance with a statute requiring such consent as a prerequisite of an adoption, may be effectively withdrawn or revoked by the natural parent before the adoption has been finally approved and decreed by the court.

Later cases, however, with which we are in accord, discussed in the above A. L. R. Annotations, show that the trend is toward the position that where a natural parent has freely and knowingly given the required consent to the adoption of his or her child, and the proposed adoptive parents have acted upon such consent by bringing adoption proceedings, the consent is ordinarily binding upon the natural parent and cannot be arbitrarily withdrawn so as to bar the court from decreeing the adoption. This is particularly true, where, in reliance upon such consent, the proposed adoptive parents have taken the child into their custody and care for a substantial period of time, and bonds of affection have been forged between them and the child.

In the case at bar, however Mr. and Mrs. Driggers, who have had the custody and care of the infant Wayne for nearly two years in their Berkeley County home, not only raised no objection to the withdrawal of consent which was filed by Mr. and Mrs. Jolley, but they joined in with it, and have withdrawn from the children's court their original petition filed for adoption. So that in the case

at bar, under well recognized principles of law applicable to adoption proceedings, Section 255, subdivision 19, the Children's Court of Spartanburg County no longer has jurisdiction of any adoption proceeding relating to the infant child Wayne.

Counsel for appellant call our attention to the 1944 Supplement to the Code, Section 256-181, which deals with the creation of the Children's Court in Spartanburg County. It is stated in subdivision (c) of that section, page 29: "When jurisdiction has been obtained in the case of any child, unless a court order shall be issued to the contrary, or unless the child be committed to an institution supported and controlled by the State, it shall continue *for the purpose of this section* during the minority of the child. The duty shall be constant upon the court to give each subject in its jurisdiction such oversight and control in the premises as will conduce to the welfare of such child and to the best interest of the state." (Emphasis added.)

And on page 30, 1944 Supplement, it is provided: "All provisions of section 255 (1942 Code) not in conflict with the provisions of this section shall obtain and be applicable in the said children's court   *   *." § 256-182.

Section 255, subdivision 19, 1942 Code, gives the children's court jurisdiction in adoption proceedings only in case the parent or guardian consents to such jurisdiction. And appellant now contends that under the statutes above referred to (1944 Supplement), when once the children's court obtains jurisdiction, such jurisdiction continues during the minority of the child.

There is no conflict in these statutes. The provisions creating the Children's Court of Spartanburg County contained in the 1944 Supplement, deal with children less than sixteen years of age who are delinquent, neglected, dependent upon public support, destitute, homeless or abandoned, and in various other situations. But the adoption

of a minor as provided for under the general law (Section 255, subdivision 19) relates to entirely different circumstances, and is not in conflict with the provisions noted in the 1944 Supplement providing for the Children's Court of Spartanburg County.

Nor do we think that the lower court erred in awarding the physical custody of the child, Wayne, to Mr. and Mrs. Driggers pending the outcome of this litigation. He has been in their possession for nearly two years. Practically every county public official in Berkeley County, as shown by affidavits incorporated in the record, attest to the good moral character and the excellent home conditions and the home surroundings of Mr. and Mrs. Lee L. Driggers. They are described as "good, honest, industrious country people;" and that they and their forebears have always been and are now, law abiding and respected citizens of Berkeley County. The records contains an affidavit from the family physician of Mr. and Mrs. Driggers in Berkeley County, in which it is stated that the little boy has been under his care and observation for the past year, and the doctor expresses the opinion that he receives the unqualified devotion of Mr. and Mrs. Driggers, and that their continued custody of the child will be greatly beneficial to his welfare. There were no affidavits to the contrary before the circuit court.

In our opinion, the paramount interest of the child will be best served by continuing in the custody of his proposed adoptive parents, Mr. and Mrs. Lee L. Driggers, during the pendency of these actions.

It follows from what we have said, that the court committed no error in holding that the Children's Court of Spartanburg County has lost jurisdiction; in consolidating the habeas corpus proceeding and the adoption action brought in Berkeley County, and referring the case to a special referee.

Judgment affirmed.

STUKES, TAYLOR and OXNER, JJ., and L. D. LIDE, Acting Associate Justice, concur.