20705

Oliver K. GASKINS, Respondent, v. BLUE CROSS-BLUE SHIELD
OF SOUTH CAROLINA, Appellant.

(245 S. E. (2d) 598)

*Thomas R. Gottshall,* of *Boyd, Knowlton, Tate & Finlay,* Columbia, *for appellant.*

*Danny R. Smith,* of *Cummings & Smith,* Spartanburg, *for respondent.*

June 6, 1978.

*Per Curiam:*

The Honorable Paul M. Moore, resident Judge of the Seventh Judicial Circuit, granted summary judgment in favor of the plaintiff-respondent. The defendant-appellant alleges error and asks the review of this court.

We are of the opinion that Judge Moore properly set forth and disposed of all of the issues now before us on appeal. Let his order be printed as the directive of this court.

## ORDER OF JUDGE MOORE

This matter came before the Court on motions by both the plaintiff and defendant for summary judgment. Both parties have stipulated in oral argument that there are no issues for determination by a jury and the matter of coverage under an insurance contract is before the Court for construction and interpretation.

A review of the factual setting in which this controversy arises reveals that the plaintiff, a public school teacher, cov-

ered by the State employees and public school teachers Blue Cross-Blue Shield health and medical insurance family contract, placed his son Steve in Anneewakee Foundation in Douglasville, Georgia, on November 13, 1974. This placement was a court-imposed condition of the son's probation. The plaintiff submitted a claim for payment of hospitalization expenses for his son under his basic and major medical contract to the defendant which was denied. The plaintiff then filed this action. It appears that the plaintiff's alleged total expenses as of the date of the filing of the second Amended Complaint amounted to Twenty-Nine Thousand One Hundred Seventy-One and 50/100 ($29,171.50) Dollars. Payable under the plaintiff's Blue Cross-Blue Shield policy was Twenty-Four Thousand Five Hundred Ninety-seven and 20/100 ($24,597.20) Dollars. This figure represents Twenty-Three Thousand Three Hundred Thirty-Seven and 20/100 ($23,337.20) Dollars of major medical coverage and One Thousand Two Hundred Sixty ($1,260-.00) Dollars of basic coverage. Counsel for both parties stipulated in oral argument that the sole issue before the Court in determining whether or not these expenses are covered under the Contract is whether or not the institution known as Anneewakee Treatment Center, of Anneewakee Foundation, Inc., hereinafter called Anneewakee, meets the definition of hospital under the unamended version of Blue Cross-Blue Shield contract.

A copy of the entire contract in question has been supplied to the Court. The basic Blue Cross contract provides for benefits for a member admitted to a "member hospital". "Member Hospital" in Article I, paragraph 11, is defined as "any hospital which has an operating agreement in effect with any Blue Cross plan." The basic Blue Cross contract in Article I, Section 10 and the major medical contract in Article I, Section 8, gives the following definition for hospital:

" 'HOSPITAL' means an institution which, for compensation from its patients and on an inpatient basis, is primar-

ily engaged in providing diagnostic and therapeutic facilities for the surgical and medical diagnosis, treatment and care of injured and sick persons by or under the supervision of a staff of Physicians who are duly licensed to practice medicine, and which continuously provides twenty-four (24) hour-a-day nursing service by registered graduate nurses physically present and on duty, and which is not, other than incidentally, a nursing home, or a place for: (a) rest, (b) the aged, (c) drug addicts, (d) alcoholics, or (e) the treatment of pulmonary tuberculosis or mental disorders. *For purposes of this Contract, Hospital shall also mean a Hospital with which any Blue Cross Plan, approved by the American Hospital Association, has an operating agreement.* Also, for purposes of this Contract, included within the definition of Hospital are the Palmetto Center in Florence, South Carolina, the Holmes View Center in Greenville, South Carolina, and Central Addictions Facility Demonstration Project in Columbia, South Carolina specifically for the treatment of alcoholism." (Emphasis supplied).

It is admitted that Anneewakee is a place primarily for the treatment of mental disorders. However, Anneewakee may still meet the definition of hospital if it has an operating agreement with any Blue Cross Plan, approved by the American Hospital Association, as set forth above. Thus, the sole question before the Court is whether or not Anneewakee had such an "operating agreement" with any Blue Cross Plan.

The defendant's position, as shown through its various affidavits and depositions, is that an "operating agreement" must be defined as a written document entitled "Participating" or "Contracting" agreement, although the term "operating agreement" is not defined within the policy in question and there are no *written* Blue Cross-Blue Shield contracts entitled "operating agreement" in existence. Anneewakee admittedly has no such written agreement entitled "Participating" or "Contracting" agreement with a Blue Cross Plan. The defendant contends that this interpretation

of the term "operating agreement" is the only reasonable interpretation and that the plaintiff's interpretation as hereinafter discussed is "inventive."

The plaintiff submits that no written contract is necessary in order for Anneewakee's relationship with a Blue Cross Plan to be considered an operating agreement. In support thereof are various affidavits and depositions from the officials of Anneewakee along with a letter of November 12, 1974, from William L. James of Blue Cross-Blue Shield of Georgia/Atlanta.

The Court has considered all the various affidavits, depositions, and related pleadings in this matter and must be guided by the well established legal principles under South Carolina law governing the construction of insurance contracts. The terms of an insurance policy must be construed most liberally in favor of the insured, and if the policy, words and language of the policy, when considered as a whole, give rise to a patent ambiguity or are capable of two or more reasonable interpretations, at least one of which favors coverage, that construction which is most favorable to the insured must be adopted.

It appears to the Court that the plaintiff's interpretation of the term "operating agreement" is not inventive and is certainly equally as reasonable as the defendant's. An agreement need not be in writing. The term "agreement" does not necessarily import any direct or express stipulation, nor is it necessary that it should be in writing. If there is a verbal understanding to which both parties have assented, and upon which both are acting, it is an agreement. The word "agreement" is a concurrence and an engagement that something should be done or omitted. It is a coming together of parties in an opinion or determination, the union of two or more minds in a thing done or to be done, a mutual assent to do a thing, but the assent need not be formally made; it may be inferred from the parties' acts. *Smith v. Jones,* 185 Ga. 236, 194 S. E. 556, 560 (1937).

Further, "agreement" does not necessarily import any direct or express stipulation and it is not necessary that it should be in writing. A verbal understanding to which both parties have assented and upon which *both are acting* may be considered an agreement. *Safe Harbor Water Power Corporation v. Federal Power Commission,* 124 F. (2d) 800, 808 (3 Cir. 1941). The term agreement is often used as synonymous with contract, but properly speaking has a wider term than contract. Therefore, "agreement" does not in and of itself connote a writing. The definition in this matter is further broadened by the term "operating". The defendant was actively engaged in drafting of the insurance contract in question. If it had so desired to define "operating agreement" as a written agreement entitled "participating agreement" or "contracting agreement", as it now attempts, it could have done so. It failed to do so and the resulting ambiguity of construction must be construed against it and in favor of coverage. It cannot now restrict the definition so as to exclude coverage. Accordingly, the Court finds that the existence of a written agreement between Anneewakee and a Blue Cross Plan is not necessary for there to be an operating agreement between the same.

Therefore, the relationship between Anneewakee and the various Blue Cross Plans must be examined in order to determine whether or not any such relationship constitutes an operating agreement. The affidavits and depositions of the officials of Anneewakee Foundations, Inc. along with the November 12, 1974 letter of William L. James of Blue Cross-Blue Shield of Georgia/Atlanta indicate that Anneewakee had at least one such agreement with Blue Cross-Blue Shield of Georgia/Atlanta. The affidavit of O. L. Pedigo, II, concerning the financial and accounting records of Anneewakee Foundation, Inc., states that Anneewakee Treatment Center has unwritten operating agreement with several Blue Cross-Blue Shield Plans whereby benefits are provided for subscribers who receive service at Anneewakee Treatment Center, Blue Cross-Blue Shield of Geor-

gia/Atlanta is included in the Plans that he lists. Also considered were the conflicting affidavits of Dr. Louis Poetter concerning the term "operating agreement." His understanding of the term was clarified through his deposition in which he stated that Anneewakee's *agreement* with Blue Cross-Blue Shield of Georgia/Atlanta was verbal (Deposition, page 18). He further stated:

"A. Yes. Of course, the confusion is coming out of number five, do we have an operating agreement with Blue Cross-Blue Shield. It's just like what we've been through already in this deposition. Our operating agreement or the thing that we've come to is that we had a clarification and an agreement, that we would relate to Blue Cross-Blue Shield as a non-participating hospital, because the people in the original discussion felt that they did not want to underwrite and, I guess, may be a deficit of a hospital plan's actuary program . . ." (Deposition, pages 19-20).

Thus, Dr. Poetter confirmed that to the best of his understanding Anneewakee Treatment Center had a working operating agreement with Blue Cross-Blue Shield of Georgia/Atlanta. The November 12, 1974, letter of William L. James is indicative of this. In it James states:

"Dear Dr. Poetter: We are pleased to advise that Blue Cross of Georgia/Atlanta now provides benefits for subscribers who receive service at the Anneewakee Treatment Center. Benefits will be paid on a non-participating hospital arrangements based on each subscriber's contract, of which each subscriber has a copy. We are *looking forward to working with you* and your staff. . . ." (Emphasis supplied.)

James' letter is clearly a recognition of a business agreement between Anneewakee Foundation and Blue Cross-Blue Shield of Georgia/Atlanta under which they operated to the mutual satisfaction of each other. James further indicated that Blue Cross-Blue Shield of Georgia/Atlanta pays benefits directly to Anneewakee Foundation and has issued it a

provider number (James Deposition, Page 23). The Court finds that there was a meeting of the minds between Anneewakee Foundation and Blue Cross-Blue Shield of Georgia/Atlanta in the form of a business agreement, which although not in the form of a written participating or contracting agreement, was an agreement under which they operated and therefore may be considered an operating agreement. William L. James and Leslie H. Patterson state in their depositions that they do not consider that Anneewakee had an operating agreement. However, they also state that they do not consider any relationship as an "agreement" unless it is in the form of a *written agreement* entitled either a "participating agreement" or a "contracting agreement" (Patterson Deposition, page 10; James Deposition, page 25). Regardless of whether Blue Cross-Blue Shield of Georgia/Atlanta recognizes their relationship with Anneewakee as an agreement and regardless of the nomenclature involved, the facts as stated hereinabove reveal that a business operating agreement was present between Anneewakee and Blue Cross-Blue Shield of Georgia/Atlanta at least as of November 12, 1974.

For the reasons above stated, the Court finds that the policy in question is susceptible to more than one reasonable interpretation, and that the interpretation proposed by the plaintiff is reasonable. As previously stated, when an insurance policy such as this one is susceptible to more than one reasonable interpretation, one of which would provide coverage, this Court must hold as a matter of law in favor of coverage. *Parker v. Jefferson Standard Life Insurance Company*, 158 S. C. 394, 155 S. E. 617 (1930); *Harwell v. Mutual Benefits H. & A. Association*, 207 S. C. 150, 35 S. E. (2d) 160 (1945); *Brown v. State Farm Mutual Automobile Liability Insurance Company*, 233 S. C. 376, 104 S. E. (2d) 673 (1958); *Walker v. Commercial Casualty Insurance Company*, 191 S. C. 187, 4 S. E. (2d) 248 (1939).

In accordance with the foregoing, defendant's motion for summary judgment is denied and summary judgment is

hereby granted to the plaintiff as Anneewakee Treatment Center meets the definition of hospital under the contract in question.

And it is so ordered.