0177

Gerald L. TROUTMAN, Appellant, v. FACETGLAS, INC., Respondent.
(316 S. E. (2d) 424)

Court of Appeals

*T. Hugh Simrill, Jr.* and *Thomas F. McDow*, Rock Hill, *for appellant.*

*David A. White* and *Benjamin A. Johnson, of Roddey, Carpenter & White*, Rock Hill, *for respondent.*

Heard March 27, 1984.

Decided May 21, 1984.

CURETON, Judge:

This is a tort action in which appellant Gerald L. Troutman seeks to recover damages from Facetglas, Inc. for wrongful discharge. After Troutman presented his evidence, the trial court granted Facetglas's motion for an involuntary nonsuit on the ground that Troutman's complaint "failed to state a cause of action cognizable in this state." We affirm.

Troutman's complaint alleges and the evidence shows that he was a stockholder in Facetglas. He was also an officer, a member of the board of directors and plant manager at Facetglas's Rock Hill plant pursuant to an employment contract terminable on December 31, 1978.

During the spring of 1977, Troutman was involved in a divorce action. According to Troutman, Facetglas's agents continuously confronted him with his domestic problems and caused him to believe that his position with Facetglas was dependent upon settlement of the divorce suit. Facetglas concedes that on July 30, 1977, its president told Troutman that "if [Troutman's] wife or her attorney made any effort to attach or otherwise reach [Troutman's] stock in [Facetglas] that [Troutman] would be fired immediately."

On the day the above remark was made, Troutman submitted to Facetglas a letter of resignation that was prepared by Facetglas. The letter stated that Troutman resigned as an officer and director, accepted $4,000 in full settlement of all salary and bonus claims and that Facetglas was authorized to repurchase his stock for $12,000 which was its purchase price.[1] Troutman was then transferred to Facetglas's West Virginia Plant where he held a managerial position at his same salary but had no employment contract. Troutman was later terminated from his position in West Virginia but does not contest that termination. Troutman claims that he signed the letter and agreed to the transaction only because of threats from Facetglas's agent that he would be fired if he didn't and would thus receive no benefits. He therefore claims he was forced to participate in the transactions.[2]

While Troutman labels his cause of action as one for wrongful discharge and the trial judge characterized it as a cause of action for "economic duress," Troutman argues that the label is unimportant; the question is whether a tort has been alleged. We disagree. This Court does not have the time nor the inclination to sift through a catalog of torts

---

[1] The record reflects that there was a secret arrangement whereby Troutman was actually paid $30,000 for his stock.

[2] For purposes of this appeal we must view the evidence and all inferences to be drawn from it in the light most favorable to Troutman. *Associate Management, Inc. v. E. D. Sauls Construction Co.,* 279 S. C. 219, 305 S. E. (2d) 236 (1983).

to determine if Troutman's factual allegations establish the elements of *any* tort. Troutman has the obligation to apprise the trial court of the theory of his cause of action and that theory must be adhered to by this Court on review. *Bramlett v. Young*, 229 S. C. 519, 93 S. E. (2d) 873 (1956).

Because Troutman alleges in his complaint that his cause of action is based on wrongful discharge and the trial court viewed his cause of action as one for "economic duress," we feel compelled to examine the allegations and evidence to determine if a cause of action is sustainable on either ground. The issues presented then are whether Troutman's allegations and evidence that his free will was so overcome by Facetglas's threats that he surrendered his employment contract and resold his stock to Facetglas state and support a cause of action for either wrongful discharge or economic duress and, if so, whether these torts are actionable in South Carolina.

■ The elements of a tort are (1) duty; (2) breach of that duty; (3) proximate causation; and (4) injury. *Shipes v. Piggly Wiggly St. Andrews, Inc.*, 269 S. C. 479, 238 S. E. (2d) 167 (1977).

■■ It is settled law that if a tort arises out of a contract there must also exist a relationship, irrespective of the contract, that gives rise to a duty. *Meddin v. Southern Railway-Carolina Division*, 218 S. C. 15, 62 S. E. (2d) 109 (1950); *Felder v. Great American Insurance Co.*, 260 F. Supp. 575 (D.S.C. 1966). A mere breach of contract is not actionable as a tort in South Carolina, no matter what the intent of the breaching party was. *Whitten v. American Mutual Liability Insurance Co.*, 468 F. Supp. 470 (D.S.C. 1977).

Troutman argues that the tort here is separate from his contract rights because although he obtained his stock and employment rights by way of contract, he was entitled to enjoy such rights free of any duress by Facetglas directed at forcing relinquishment of such rights. Facetglas argues, and the trial court found, that an action for duress as a separate tort is not actionable in South Carolina. Our review fails to disclose a case where that issue was squarely put before our Supreme Court. We must then decide whether upon these facts a cause of action for duress as a separate tort should be recognized in this State.

Several courts have held that duress or economic duress is cognizable as a separate tort. *State Highway Comm. v. City of St. Louis*, 575 S. W. (2d) 712 (Mo. App. 1978); *Edwards v. Robinson-Humphrey Company, Inc.*, 164 Ga. App. 876, 298 S. E. (2d) 600 (1982); *Housing Authority of the City of Dallas v. Hubbell*, 325 S. W. (2d) 880 (Tex. Civ. App. 1959); *Wurtz v. Fleischman*, 89 Wis. (2d) 291, 278 N. W. (2d) 266 (Wis. App. 1979), *rev'd on other grounds*, 97 Wis. (2d) 100, 293 N. W. (2d) 155 (1980); *Neibuhr v. Gage*, 99 Minn. 149, 108 N. W. 884 (1906), *aff'd*, 99 Minn. 149, 109 N. W. 1 (1906).

The duress doctrine is intended to prevent a stronger party from presenting an unreasonable choice of alternatives to a weaker party in a bargain situation. *Olson V. Horton*, 258 N. W. (2d) 610 (Minn. 1977). The duty (in an analysis as a tort) which arises, therefore, is an obligation not to exercise superior bargaining power unreasonably. *Terrel v. Duke City Lumber Co.*, 86 N. M. 405, 524 P. (2d) 1021 (N. M. App. 1974), *aff'd in part, rev'd in part on other grounds*, 88 N. M. 299, 540 P. (2d) 229 (1975). It follows that there is a breach of that duty if the stronger party threatens an action that cannot be justified under a standard of commercial reasonableness by the weaker party's failure to meet the superior party's demands. *See* Note, *Economic Duress After the Demise of Free Will Theory: A Proposed Tort Analysis*, 53 Iowa L. Rev. 892 (1968); Dalzell, *Duress By Economic Pressure*, 20 N. C. L. Rev. 237 (1942); Dawson, *Economic Duress — An Essay In Perspective*, 45 Mich. L. Rev. 253 (1947). "[A cause of action] in fact depends on a showing that the victim would not have acquiesced in the contract [transaction] if the wrongful threats had not been issued." 53 Iowa L. Rev. *supra* at 924. But see Restatement (2d) *Contracts* Section 173 (1981) where it is said "duress and undue influence, unlike deceit, are not generally of themselves actionable torts; the victim of duress or undue influence is usually limited to avoidance and does not have an affirmative action for damages."

13 *Williston on Contracts* Section 1617 (W. Jaeger 3rd ed. 1970) defines the elements of economic duress thusly: (1) the coerced party must show he has been the victim of a wrongful or unlawful act or threat, (2) such act or threat must be one which deprives the victim of his unfettered will, (3) as a direct result the coerced party must be compelled to make a dispro-

portionate exchange of values or give up something for nothing, (4) the payment or exchange must be made solely for the purposes of protecting the coerced party's business or property interests, and (5) the coerced party must have no adequate legal remedy. In the case of *Wurtz v. Fleischman, supra,* the court in setting out the elements of the tort of economic duress stated that the victim must show that (1) a person used his superior bargaining position unreasonably or unjustifiably, (2) by wrongful conduct, generally threats, (3) the conduct or threats caused the injury, (4) the victim would not have acquiesced in the absence of wrongful threats, (5) resultant damages, and (6) the victim had no adequate legal remedy available to protect his interests at the time it was threatened.

If we were to recognize a cause of action in tort for duress in this State, it would avail Troutman nothing.

Under both the contract and tort criteria discussed above, a threat to breach a contract does not constitute duress unless there is evidence of some probable consequences of it to person or property for which the remedy otherwise afforded by the courts is inadequate. *See* 25 Am. Jur. (2d) *Duress and Undue Influence* Section 19 (1966); *accord, National American Corp. v. Federal Republic of Nigeria,* 448 F. Supp. 622 (S.D.N.Y. 1978), *aff'd,* 597 F. (2d) 314 (2d Cir. 1979). It was thus necessary that Troutman allege and prove a lack of an otherwise adequate remedy to entitle him to relief.

Troutman has made no allegation, nor has he shown the court that he had no adequate remedy at law for breach of contract or that he could not have obtained equitable relief to prevent injury to himself and his property. Further, the conduct of Facetglas here involved does not strike us as being of the nature to warrant recognition of this emerging tort. We see no compelling reason under the facts and circumstances of this case to extend the law of intentional torts in South Carolina to embrace economic duress. Therefore, we dismiss Troutman's first exception.

Troutman also claims a cause of action for wrongful discharge. We dispose of that contention summarily.

First, it is clear that Troutman was not discharged but resigned. Secondly, those jurisdictions that have recognized the doctrine of wrongful discharge did so to protect at-will

employees, which is not the case here. Finally, as stated in *Hudson v. Zenith Engraving Co., Inc.*, 273 S. C. 766, 259 S. E. (2d) 812 (1979), those courts in a minority of jurisdictions recognizing this cause of action as an exception to the at-will rule have done so based on a violation of public policy. Troutman has not alleged or proven facts that show Facetglas in any way violated public policy in its dealings with him.

Accordingly, the order of the trial court is

Affirmed.

GARDNER and GOOLSBY, JJ., concur.