22219

Lisa PHILLIPS, Appellant, v. Nanette Cumbie BAKER and Edward B. Baker, Respondents. In re Nanette Cumbie BAKER and Edward B. Baker, Petitioners, v. BABY GIRL SARAH, a minor under the age of fourteen (14) years, and Alan R. Cochran, Guardian ad Litem, Respondents.

(325 S. E. (2d) 533)

Supreme Court

*O. W. Bannister, Jr.,* Greenville, *for appellant.*

*Randall M. Chastain,* Columbia, *for respondents.*
Heard Dec. 11, 1984.

Decided Jan. 23, 1985.

CHANDLER, Justice:

Lisa Phillips (Appellant) appeals from a Family Court Order denying her petition to withdraw her consent to adoption of her infant daughter, Baby Girl Sarah (child).

Appellant contends trial judge erred in holding (1) that the best interest of the child will be furthered by denying withdrawal of the consent and (2) the consent was voluntary made.

We disagree and affirm.

■ An adoption proceeding being a matter in equity heard by the trial judge alone, this Court's scope of review extends to the finding of facts based on its own view of the preponderance of the evidence. *Baker v. Baker,* 276 S. C. 427, 279 S. E. (2d) 601 (1981); *Townes Associates Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976). *Mitchell v. Mitchell,* S. C., 320 S. E. (2d) 706 (1984).

### BEST INTEREST OF CHILD

■ S. C. Code Ann. § 20-7-1720 (1976 & Supp. 1983) authorizes the Family Court to grant a withdrawal "if it finds that the best interest of the child will be furthered thereby, ...."

On January 25, 1982, Appellant, age 16, and unmarried, gave birth to the child and on the following day executed a Consent to Adoption form. The adoptive parents (Respondents) have had sole custody of the child since January 27, 1982.

On February 2, 1982, Respondents filed a petition to adopt the child; on February 9, Appellant filed a petition to withdraw her consent previously executed; on May 24, 1982, the Family Court issued its order denying Appellant's petition.

Appellant became aware of her pregnancy in the Summer of 1981 but ignored her condition and "blocked it out of my mind" until early Fall when confronted by her mother. She then began a regimen of prenatal care.

Appellant was unable to locate the natural father who had enlisted in the Navy. Throughout the pregnancy Appellant's father demonstrated a marked hostility toward her. On one occasion he referred to the unborn child as a bastard; on another he declared that the child would not be welcome in his home.

Lengthy testimony was presented by the parties themselves and by other concerned persons as well. From that testimony the trial judge found: that Appellant, while not a "bad person," was beset with difficult problems of adolescence; that she had been reared in an atmosphere causing her to be evasive and somewhat deceptive; that she was unaware of what is involved in caring for a child; and that the home environment of her parents would be extremely disadvantageous to the child.

By contrast, he found with respect to the adoptive parents: that they are mature, settled individuals with a strong relationship, providing the child with a father image and a full-time mother; that, because of the consent, they have sacrificed much and have formed a bonding relationship with the child; and that they have plans for the wholesome development of the child, coupled with the ability to carry them through.

In adoption cases the child is the proper focus for the determination. *Morgan v. South Carolina DSS*, 280 S. C. 577, 313 S. E. (2d) 350 (S. C. App. 1984); *S.O. v. W.S.*, 643 P. (2d) 997 (Alaska 1982); *Matter of Daniel C.*, 453 N.Y.S. (2d) 572 (N.Y. Sur. 1982).

From a review of the record we find no error in the trial judge's decision, one described by him as "not easy." His conclusion that the child's best interest "will unquestionably be served by her remaining with the [Respondents]" is supported by the evidence.

## VOLUNTARINESS OF CONSENT

Appellant argues next that the trial judge erred in finding that her consent was given voluntarily. We disagree.

Her claim that she executed the consent form under duress is controverted by the evidence. She signed in the presence of her parents, her then attorney and a hospital social worker.

Appellant's evidence fails to establish duress, defined by this Court in *Cherry v. Shelby Mutual Plate Glass and Casualty Company*, 191 S. C. 177, 4 S. E. (2d) 123 (1939) as "a condition of mind produced by improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or form a contract not of his own volition."

In *Ellison v. Camby*, 269 S. C. 48, 236 S. E. (2d) 197 (1977), after recognizing the traditional view that consent may be withdrawn at any time prior to the adoption decree, we stated:

> However, the more modern trend disallows the revocation of consent voluntarily given particularly where the adoptive parents have taken the child into their home in reliance upon the consent. 156 A. L. R. 1011; *Hendrix v. Hunter*, 99 Ga. App. 785, 110 S. E. (2d) 35 (1959). In *Driggers v. Jolley*, 219 S. C. 31, 64 S. E. (2d) 19 (1951), this Court recognized that the right to revoke consent is not absolute, and noted that the trend is in favor of enforcing consent when voluntarily given and accompanied by reliance on the part of the adoptive parents. The South Carolina statutory adoption scheme leaves the question of withdrawal in the judge's discretion, assuming the Consent to Adopt is on file.

*Id.*, 269 S. C. 48, 51, 236 S. E. (2d) 197 (1977).

We find no abuse of discretion by the trial judge.

Affirmed.

LITTLEJOHN, C. J., and NESS, GREGORY and HARWELL, JJ., concur.