Randolph JOHNSON, Jr.,
Plaintiff–Appellee,

v.

CITY OF COLUMBIA, SOUTH
CAROLINA, Defendant–
Appellant.

Randolph JOHNSON, Jr.,
Plaintiff–Appellee,

v.

The CITY OF COLUMBIA,
Defendant–Appellant.

Nos. 89–1554, 90–1401.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 2, 1990.

Decided Nov. 12, 1991.

As Amended Nov. 22, 1991.

Julian Heyward Gignilliat, Gignilliat, Savitz & Bettis, Columbia, S.C., argued (Linda Pearce Edwards, Vance J. Bettis, on brief), for defendant-appellant.

Thomas Aquinas Woodley, Mulholland & Hickey, Washington, D.C., argued (Gregory K. McGillivary, on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, WILKINSON, WILKINS, and NIEMEYER, Circuit Judges.*

* Senior Judge Chapman elected not to participate    in the decision of these cases.

## OPINION

ERVIN, Chief Judge:

This case is one of a series of four civil actions [1] that were consolidated and heard by this court, sitting *en banc*. While all of these matters arose under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., it subsequently developed that they were ill-matched and that the instant case was related only to *Bodie v. City of Columbia*, 934 F.2d 561 (4th Cir.1991). Here, the City of Columbia, South Carolina (City) appeals from a grant of summary judgment in favor of the plaintiff, Randolph Johnson, Jr. For the reasons hereinafter set forth, we affirm that decision.

### I.

Randolph Johnson, Jr. (Johnson) went to work for the City as a fire fighter on June 30, 1975. He and his fellow fire fighters had a schedule of working for one day "on" followed by two days "off" until June 1985. After the Supreme Court handed down its decision in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the City changed the fire fighters' schedule to require a 24¼ hour tour of duty with a two-week pay period. The new procedure also provided that sleep time and meal time would be excluded when the hours worked were computed. In October of 1985, thirty-six fire fighters, including Johnson, wrote identical letters to the City Manager (JA 223), reading in part:

"... I wish to complain that the City is in violation of the provisions of the Fair Labor Standards Act, ...

"I normally work one-hundred twelve (112) hours in my two-week pay period. The City has made no provisions to compensate the excess over one-hundred and six (106) hours per pay period by way of overtime pay, to which I understand I am entitled. In addition, effective June 10, 1985, the City added seventy-five (75) minutes to my pay period by increasing the duration of each shift by fifteen (15) minutes. It is also the practice of the City to exclude sleep time and meal time from overtime calculations.

"I do not consent to these actions. I ask that you take action to conform City pay policies in regard to myself and other employees of the Columbia City Fire Department to the provisions of the Fair Labor Standards Act...."

On October 21, 1985, the City Manager replied to these letters, informing the fire fighters that anyone who failed to consent to any conditions of employment could not continue working. He enclosed a written agreement (JA 25) to each fire fighter, advising him that unless he signed the document *as written* and delivered it personally to the Chief by 5 o'clock PM, October 24, 1985, then, "for the good of the City, you are discharged as of that date and time." By the stated deadline, Johnson and all of the other fire fighters who had written had signed the Agreement. (JA 26).

On February 3, 1989, Johnson filed a complaint in this case against the City asserting that the City had violated the FLSA by failing to pay him overtime for all hours worked in excess of the hourly levels set forth in § 7(k) of the FLSA, 29 U.S.C. § 207(k). He continued to state that he did not "agree" to the City's policy of refusing to treat sleep and meal time as "hours worked." He further alleged that this refusal deprived him of credit for having worked overtime. In addition, he challenged the right of the City to add 15 minutes to his 24 hour shift.

Upon learning of Johnson's lawsuit, the City Manager, on February 8, 1989, sent an "Inter–Office Memo" to Johnson (JA 139), providing in part:

"I have just been notified of your suit against the City under the Fair Labor Standards Act and more particularly of

---

**1.** The other cases consolidated for the *en banc* sitting were: *Wilson v. City of Charlotte*, No. 89–2388(L); *Bodie v. City of Columbia*, 934 F.2d 561 (4th Cir.1991); and *Schmidt v. County of Prince William*, 929 F.2d 986 (4th Cir.1991).

your 'declaration' which is attached to the complaint. I infer from these documents that you no longer agree to exclude sleep time and meal time from the computation of your hours worked under the Fair Labor Standards Act. Since the City does not agree to include sleep time and meal time in the computation of your hours of work, it would appear that you and the City do not have an employment agreement. I may be mistaken, so I will give you the opportunity to sign a newly dated copy of the agreement which you signed on October 21, 1985. You are to deliver it personally to the Fire Chief and, until you do so, you will not be permitted to work.

"Your job status until you sign the agreement is to be on annual leave. If you have no annual leave or if it is exhausted before this matter is resolved, your status will be unpaid leave of absence. Leave of absence status would mean that you must pay for your health insurance premiums and would be subject to having your job filled by another employee or by a new hire. It is unlikely, but nonetheless possible, that I will find it necessary for the good of the City to terminate your employment."

In response, on February 13, 1989, Johnson re-signed the copy of the Agreement which he had originally executed in 1985 (JA 140).

On June 8, 1989, the district court considered the motions for summary judgment filed by Johnson and by the City. Three months later, the court granted Johnson's motion for summary judgment and his motions for a preliminary and permanent injunction. The City timely appealed to this court.

## II

The outcome of this dispute turns on whether Johnson expressly agreed to the exclusion of sleep time and meal time from the compensable hours that he worked.

Generally speaking, the FLSA clearly requires employers to pay employees overtime for all hours worked over forty in one week. 29 U.S.C. § 207(a). There are, however, certain exceptions and exclusions, including exclusions relating to both sleep time and meal time.

With regard to sleep time, the Department of Labor (DOL) acting under the FLSA, has issued a regulation designated as 29 C.F.R. § 553.222 which in its present form provides: [2]

"(C) Sleep time can be excluded from compensable hours of work, however, in the case of police officers or fire fighters who are on a tour of duty of more than 24 hours, *but only if there is an expressed or implied agreement between the employer and the employees to exclude sleep time. In the absence of such an agreement, the sleep time is compensable.* In no event shall the time excluded as sleep time exceed 8 hours in a 24–hour period. If the sleep time is interrupted to such an extent that the employee cannot get a reasonable night's sleep (which, for enforcement purposes means at least 5 hours), the entire time must be counted as hours of work. [Emphasis supplied]."

The comparable regulations relating to meal times say:

"(d) In the case of police officers or fire fighters who are on a tour of duty of more than 24 hours, meal time may be excluded from compensable hours of work provided that the tests in 29 C.F.R. 785.19 and 785.22 are met."

29 C.F.R. § 553.223(c). 29 C.F.R. § 785.19 only permits the exclusion of meal time from compensable hours where a "bona fide meal period" is provided—i.e., "[t]he employee must be completely relieved from duty for purposes of eating regular meals." 29 C.F.R. § 785.19. A fire fighter like Johnson is not relieved of his duties during any time that might be designated "meal time" by the City.

■ "Exemptions from or exceptions to the Act's requirements are to be narrowly

---

**2.** The old regulation (which was in effect prior to January 16, 1987) was 29 C.F.R. § 553.15. It is substantially similar to the new one, 29 C.F.R. § 553.222.

construed against the employer asserting them." *Donovan v. Brown Equipment & Service Tools, Inc.*, 666 F.2d 148, 153 (5th Cir.1982); *Usery v. Yates*, 565 F.2d 93, 97 (6th Cir.1977). Since the City seeks to come within the meal time and sleep time exceptions, the burden is on the City to show that it is entitled to the benefits of those exceptions. *See Clark v. J.M. Benson Co.*, 789 F.2d 282, 286 (4th Cir.1986); *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 291, 79 S.Ct. 756, 757, 3 L.Ed.2d 815 (1959); *Usery v. Yates*, 565 F.2d at 97. Thus, the City has the burden of showing that Johnson expressly agreed to the exclusion of sleep time and meal time from the compensable hours that he worked.

We note at this point that Johnson's case is quite different from that of the plaintiff in our recent case *Bodie v. City of Columbia*, 934 F.2d 561 (4th Cir.1991).[3] Both Bodie and Johnson worked for the City, and their claims before us arose from the same actions by the City. However, there are significant factual distinctions between the two cases. Unlike Johnson, Bodie never protested the changes imposed by the City. *Bodie*, 934 F.2d at 563. In fact, Bodie did not protest the City's actions until after he retired from working for the City. *Id.* In contrast, Johnson formally protested the City's actions by writing a letter along with 35 other fire fighters. Thereafter, he also displayed his protest by filing this lawsuit.[4]

In *Bodie*, this Court held that there was an implied agreement between the City and Bodie based upon Bodie's continued employment, his continued receipt of pay checks, and his failure to protest the City policies. *Id.* at 563–64. Due to the different circumstances surrounding Johnson's continued employment and that of Bodie, we find that *Bodie* does not control the outcome of this case. Rather, we must decide in this case whether Johnson entered an express agreement with the City.

**3.** As noted above, *Bodie* was consolidated with this case for the *en banc* hearing.

**4.** The City was aware of this second protest by Johnson. The City Manager wrote Johnson an

## III

■ The district court found that although Johnson signed two purported agreements, there was no meeting of the minds between the City and Johnson. The court reasoned that the threats of termination by the City placed Johnson in a "catch 22" position where he either had to sign the agreement in order to keep his job or else quit to show his objection. *Johnson v. City of Columbia*, CA–89 265–3, slip op. at 11 (D.S.C. Sept. 8, 1989). Because there were no cases directly dealing with express agreements, the court drew an analogy to two implied agreement cases. *See Johnson, supra*, slip op. at 5–7, 10–11 (citing *Beebe v. United States*, 640 F.2d 1283, 226 Ct.Cl. 308 (1981); *Jacksonville Professional Fire Fighters Ass'n Local 2961 v. City of Jacksonville*, 685 F.Supp. 513 (E.D.N.C.1987)). In those cases, the courts found that no implied agreements arose because the employees contemporaneously protested the employers' new policies. *See Beebe*, 640 F.2d at 1291; *Jacksonville Professional Fire Fighters*, 685 F.Supp. at 519–20. The district court analogized Johnson's situation, noting that his continuous protests negated the City's assertion that an express agreement was reached. *Johnson, supra*, slip op. at 11–12.

■ The district court found that although § 7 of the FLSA does not expressly require that the agreement be voluntary, there must be some evidence that Johnson voluntarily entered the agreement. *Id.* at 12 (citing *Brewer v. City of Waukesha*, 691 F.Supp. 160, 163 (E.D.Wis.1988)). The court concluded that Johnson had not voluntarily entered into an agreement with the City. *Id.* This conclusion was based in part on the court's determination that Johnson had signed the agreements with the City under duress. *Id.* at 12. We agree with the reasoning of the district court.

"Inter–Office Memo" indicating that the City knew of the lawsuit. The Memo also required Johnson to sign a new "agreement" in order to continue his employment with the City.

## IV

Because there are no cases directly dealing with express agreements like the one before us, an analogy to the implied agreements cases is proper. Those cases ultimately turn on whether the employee protested the employer's actions. If the employee contemporaneously protested, the courts have found that there was no implied agreement between the parties. *See Beebe, supra,* 640 F.2d at 1291; *Jacksonville Professional Fire Fighters, supra,* 685 F.Supp. at 519–20; *Int'l Ass'n of Firefighters, Local 349 v. City of Rome,* 682 F.Supp. 522 (N.D.Ga.1988). However, if the employee did not protest and continued to work and receive paychecks, the courts have found that an implied agreement did arise between the parties. *See Bodie, supra,* 934 F.2d at 563; *Rousseau v. Teledyne Movible Offshore, Inc.,* 805 F.2d 1245, 1248 (5th Cir.1986), *cert. denied,* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987); *Ariens v. Olin Mathieson Chemical Corp.,* 382 F.2d 192, 194 (6th Cir.1967).

In this case, the City knew it could not rely upon implied agreements with the 36 employees (including Johnson) who protested the City's new policy because of the above case law involving contemporaneous protests by employees. (JA 233–35). As a result, the City "went out and got an express agreement." (JA 234). However, the City did so by using improper means. The City admits that it used economic pressure to get Johnson and the others to sign the agreements. (JA 242). However, we find that the means used by the City amounted to more than mere economic pressure.

Under South Carolina law, in order for there to be an agreement, there must be a meeting of the minds of the parties. *Gaskins v. Blue Cross–Blue Shield of South Carolina,* 271 S.C. 101, 245 S.E.2d 598, 600 (1978). As the South Carolina Supreme Court has stated:

The word "agreement" is a concurrence and an engagement that something should be done or omitted. It is a coming together of parties in an opinion or determination, the union of two or more minds in a thing done or to be done, a mutual assent to do a thing, ...

*Gaskins,* 245 S.E.2d at 600. *See also Player v. Chandler,* 299 S.C. 101, 382 S.E.2d 891, 893 (1989). We do not believe that there was a meeting of the minds in this case. Johnson protested the City's new policy when he and 35 other fire fighters wrote the letter to the City. The City knew that it could not rely upon any implied agreement with those fire fighters as a result of their protestations. The City then tried to force the fire fighters to "agree" to the policy by requiring them to sign the drafted "agreement" under penalty of termination.

■ The City admits that it knew that Johnson and his fellow fire fighters did not agree to the new policy when they wrote the letter. Nevertheless the City argues that the fire fighters did agree based upon the written agreement they signed. The City overlooks the fact that there was no "meeting of the minds" evidenced in this chain of events. There was no "coming together" of the parties in their opinions regarding the City's policy. Instead, the evidence shows that the City used its position and threats of termination to force the fire fighters to sign the agreements. In Johnson's case, there was further evidence of his protests over the City's policy when he filed the instant lawsuit. The City apparently recognized that this continued protest might harm its claim that Johnson "agreed" to the meal time and sleep time policies and thereafter forced Johnson to sign a second agreement.[5] We agree with the district court's conclusion that there was no meeting of the minds under these facts sufficient to support an agreement under South Carolina law.

The district court found that the actions by the City in Johnson's case constituted duress under South Carolina law. The elements of economic duress were set out by

---

5. The letter from the City Manager to Johnson regarding his lawsuit stated: "I infer from these documents that you no longer agree to exclude sleep time and meal time from the computation of your hours worked under the Fair Labor Standards Act." (JA 139)

the South Carolina Court of Appeals as follows:

> (1) the coerced party must show that he has been the victim of a wrongful or unlawful act or threat, (2) such act or threat must be one which deprives the victim of his unfettered will, (3) as a direct result the coerced party must be compelled to make a disproportionate exchange of values or give up something for nothing, (4) the payment or exchange must be made solely for the purposes of protecting the coerced party's business or property interests, and (5) the coerced party must have no adequate legal remedy.

*Troutman v. Facetglas, Inc.*, 281 S.C. 598, 316 S.E.2d 424 (Ct.App.1984) (citing 13 *Williston on Contracts*, Section 1617 (W. Jaeger 3rd ed.1970)). As the court in *Troutman* explained, "[t]he duress doctrine is intended to prevent a stronger party from presenting an unreasonable choice of alternatives to a weaker party in a bargain situation." *Troutman*, 316 S.E.2d at 426. *See also Phillips v. Baker*, 284 S.C. 134, 325 S.E.2d 533, 535 (1985) (noting that duress is a condition of the mind produced by improper pressure that causes a person to do an act not of his own volition).

In this case, we agree with the district court's conclusion that Johnson would not have signed the agreements were it not for the "improper" threats made by the City. At every turn, Johnson voiced his protests to the new policy. He only signed the agreements when faced with the untenable choice of either quitting his job and forfeiting his rights altogether[6] or signing the agreements and pursuing his remedies through this lawsuit. The City admits that it could not get an implied agreement in the face of the protests by Johnson. Thus, the City knew that Johnson did not share the City's opinion regarding the validity of the sleep time and meal time exclusions. In our view, the City could not force Johnson to sign an "express agreement" by threatening discharge in order to circumvent his already stated views. As noted above, the City had the burden of showing that Johnson expressly agreed to the exclusions. We find that the City failed to carry its burden when the evidence shows that there was no meeting of the minds between Johnson and the City. Accordingly, we find that the district court correctly concluded that Johnson did not expressly agree to the exclusions of meal time and sleep time proposed by the City.

## V

In summary, we find that the district court was correct when it held that Johnson did not expressly agree to the exclusion of sleep time and meal time from his compensable hours of work. Therefore, we affirm the district court's grant of summary judgment in favor of Johnson.

AFFIRMED.

WIDENER, Circuit Judge, dissenting:

The majority today holds that appellee Johnson's written, express agreement to the City's wage plan promulgated pursuant to 29 C.F.R. §§ 553.222, 553.223 is ineffective on the grounds that his consent was given involuntarily and under economic duress. Because I am of opinion that the requirements contained in the City's duly-promulgated plan became conditions of Johnson's employment with the City, and that the concepts of voluntariness and economic duress have no application to an express agreement by an employee in this setting, I respectfully dissent.

On two separate occasions, October 21, 1985 and February 13, 1989, Johnson expressly agreed to the exclusion of time spent sleeping and eating from work time under the City's wage plan. Johnson expressed his agreement to this plan both by signing written statements to that effect and by choosing to continue his employment as a Columbia firefighter. I believe that, in determining whether the City's threat of termination constitutes duress under South Carolina contract law, the major-

---

**6.** We note that had Johnson quit his job, he would have then lacked standing to challenge the policies imposed by the City.

ity asks and answers the wrong question. In my opinion, the correct question in this case is whether 29 C.F.R. §§ 553.222, 553.-223 [1] create an entitlement to the inclusion of sleep and meal time in firefighters' work time that, in practical effect, can be taken away only in exchange for wage or benefit concessions on the part of the City.

I find the notion that §§ 553.222, 553.223 were intended to create an entitlement to the inclusion of sleep and meal time in compensable work time to be incompatible with the Fair Labor Standards Act's (FLSA) general scheme of providing several different compensation plans that employers may choose to implement with the "agreement" of their employees.[2] If the majority is correct in holding that an employee may withhold his consent to a plan promulgated in accordance with the FLSA and the regulations and yet continue working for that employer, then no rational employee would ever consent to such a plan without receiving something in exchange. This forced *quid pro quo* system would render these provisions of the FLSA meaningless, as no employer would be able to take advantage of these plans in their current form without incurring additional costs in the form of compensation in exchange for the employees' agreement. This, I submit, simply is not the result contemplated by the FLSA.

Because I find no basis in the FLSA or the regulations for the proposition that the creation of such an affirmative right was intended, I believe that the City was free to restructure the firefighters' schedules so that a normal tour of duty would not generate overtime hours. A municipality in no way acts improperly when it merely chooses to exercise its legal rights. This being the case, the contract doctrine of duress simply has no application here. See *Troutman v. Facetglas, Inc.*, 281 S.C. 598, 316 S.E.2d 424, 427 (Ct.App.1984) (to establish

defense of economic duress victim must have been subjected to unlawful act or threat); 13 *Williston on Contracts* §§ 1602, 1606 (3d ed.1970) (no duress where pressure exerted is not wrongful or unlawful).

I would thus vacate the judgment of the district court and remand for further proceedings.

I am authorized to say that Circuit Judge NIEMEYER joins in this dissent.

---

1. The agreement requirement for meal time is incorporated into 29 C.F.R. § 553.223 by reference to 29 C.F.R. § 785.229(a).

2. In addition to the § 7(k) plan that the City of Columbia implemented, the FLSA and the regulations contain at least three other wage plans

that speak of "agreement" between employer and employee. See FLSA § 7(g) (allowing payment at "piece rates"); § 7(j) (special scheduling plan for hospital workers); 29 C.F.R. § 778.114 (special fixed salary plan for employees whose work time fluctuates from week to week).