HEARD NOVEMBER TERM, 1875.

## GRIER *vs.* WALLACE.

A purchaser of slaves, in 1846, paid part cash and gave his promissory note for the balance of the purchase money. He sold some of the slaves, and in 1858 took up the promissory note and gave his sealed note, with a surety, for the amount then due: *Held,* In an action against the surety, that he could not set up as a defense thereto that the slaves were unsound at the time of the purchase.

### BEFORE MACKEY, J., AT YORK, APRIL TERM, 1875.

This was an action by W. M. Grier, as executor of R. C. Grier, deceased, against A. T. Wallace, on a joint and several sealed note for $632.50, given by Robert Whitesides and the defendant to the plaintiff's testator, bearing date the eighth day of January, 1858, and payable one day after date. The defense alleged in the answer was that the note was given for the purchase money of slaves, and that they were unsound at the time of the purchase.

At the trial the defendant gave evidence tending to show that in 1846 Robert Whitesides purchased from R. C. Grier five slaves, named Julia Ann, Henry, John, Milly and Agy, at the price of $1,750; that he paid in cash part of the purchase money, and gave his note to Grier for the balance; that some time that or the next year he sold Julia Ann and Agy, and in 1857 or 1858 he sold John for $1,200 cash; that John and Julia Ann were unsound at the time of the purchase; and that on the 8th January, 1858, Whitesides made a payment on the note given in 1846, took up the same, and gave the note, with the defendant as his surety.

His Honor charged the jury:

That the policy of the law or the decisions of the Courts overriding the Constitution and enforcing the collection of *negro bonds* was bad and unfortunate, and would not likely be the law long; but that the plaintiff, under the decisions of the Courts, had a right to bring his action, and it was a question for the jury to say whether the defendant had shown to their satisfaction that the slaves were unsound, as alleged in the answer; that, although the defendant, Wallace, was not obligated on the original note given in 1846, yet the note given in 1858, and now sued upon, was nevertheless given for the purchase of the slaves, and that it was competent for the jury to go behind the note of date January 8, 1858, and inquire whether the slaves were sound in 1846, when Robert White-

sides first purchased them; that the question of unsoundness was one for the jury to determine, and that it made no difference whether the unsoundness was known or unknown to the vendor at the time of the sale; that the execution of the note in 1858 was not, in contemplation of law, a settlement or ratification of the contract of purchase made in 1846, and could not preclude the jury from going back to the time of original sale and inquiring into the condition of the slaves.

The verdict was for the defendant.

The plaintiff then moved the Circuit Court for a new trial on the following grounds, amongst others:

1. Because Robert Whitesides, the principal debtor on the sealed note upon which this action is based, having purchased from plaintiff's testator, in 1846, the five slaves, namely, Henry, John, Milly, Julia Ann and Agy, at the price of $1,750, and having then paid in cash part of the purchase money, and given his note for the balance, without any surety thereon, it is respectfully submitted, the note which is now the cause of action, of date the eighth day of January, 1858, given by the said Whitesides and the defendant, A. S. Wallace, must be regarded as a new contract and constituting an entirely new cause of action, and the jury ought not to have gone behind the new contract to consider the alleged unsoundness of said slaves, but should have found for the plaintiff the full amount demanded in the complaint.

The plaintiff appealed on the same grounds as those taken for a new trial.

*Williams, Allison,* for appellant.

*Beatty, Thompson,* contra.

April 27, 1876. The opinion of the Court was delivered by

WRIGHT, A. J. This action was brought on a promissory note given for balance of purchase money of slaves which were sold to Robert Whitesides in 1846, by R. C. Grier, now deceased, who left a will, of which the appellant was appointed executor. At the time of purchase Whitesides paid a portion of the purchase money, and executed and delivered to R. C. Grier his note for the balance due.

On the eighth day of January, 1858, the said Whitesides took up the note of 1846, and gave in lieu another note, with the respondent, Wallace, as surety upon the same.

This action is brought against the surety. It appears that Robert Whitesides purchased five slaves for the sum of $1,750, and paid in cash a portion of the purchase money. That some time the same year of the purchase, he sold two of the said slaves, Julia Ann and Aggy; and in 1857 or 1858 he sold the slave John for the sum of $1,200. It is clear that Whitesides realized more than the amount of money he paid for the slaves, and was satisfied with his bargain; for if they had been so unsound as to cause him loss by the purchase, he had a remedy by moving to rescind the contract, which remedy he did not resort to, but sold the slaves he desired and retained the others. The first ground of appeal is the only one necessary to consider to dispose of all upon the record and to fully determine this case.

Whitesides is estopped now from inquiring into the condition of the slaves at the time of their purchase for two reasons—first, because he disposed of the slaves, or a portion of them, thereby giving assurance that satisfaction had been rendered by the contract of purchase; and, secondly, by giving a new note for the old one, twelve years after the purchase, with the respondent, Wallace, as surety upon the same, thereby acknowledging the former transaction as a valid one, and the consideration as a good and valuable one by a higher guarantee, to wit: security in case of failure on the part of the principal. This was a new contract, the former note having been parted with as it was extinguished.—*Chastain* vs. *Johnson*, 2 Bail., 574; *Doogan* vs. *Ashley*, 1 Rich., 37; *Gardiner* vs. *Hust*, 2 Rich., 608.

The principal in this case having failed, the surety must be held bound. As to the remarks of the presiding Judge, "that the policy of the law or the decisions of the Courts overriding the Constitution and enforcing the collection of negro bonds was bad and unfortunate, and would not likely be law long," it is only necessary to say that this Court, and also the Supreme Court of the United States, have decided such debts are collectable, and we do not regard it consistent with the duty of a Judge, who is bound to administer the law as it is announced by those who, under the Constitution of the United States and of this State, are vested with the right of expounding it, knowingly so to charge a jury as to

impress them with a right on their part to return a verdict contrary to law.

The motion for a new trial is granted.

*Moses,* C. J., and *Willard,* A. J., concurred.