14922

CHERRY v. SHELBY MUTUAL PLATE GLASS & CASUALTY COMPANY

(4 S. E. (2d), 123)

April, 1939.

*Mr. H. L. Erckmann,* for appellant,

*Mr. John I. Cosgrove,* for respondent,

July 20, 1939.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

We take from the "Statement" in the Transcript of Record, the following:

The complaint alleges that defendant is a non-resident insurance company and on April 3rd, 1936, issued for value its Standard Automobile Policy for one year whereby it agreed to pay on behalf of plaintiff all sums within the limit of its liabiity which the insured shall become obligated to pay by reason of liability imposed on him by law for damages because of bodily injury including death sustained by any person or persons caused by accident arising out of maintenance or use of the automobile owned by plaintiff —the limit of liability being ten thousand dollars each person and subject to that limit for each person ten thousand dollars each accident.

That policy provided that defendant agreed to defend in name and on behalf of plaintiff any suit against him alleging such injury and reserved to itself the right to make investigations, negotiations and settlement of any such claims or suits as it might deem expedient and provided that insured should not voluntarily make settlement or payment except at own expense and defendant reserved to itself the exclusive right to settle and compromise all suits and plaintiff was prohibited from doing so except with consent of defendant.

The complaint further alleges that on August 26, 1936, while said policy was in force, plaintiff was in said automobile, driven by his colored chauffeur and while passing through Bowman, S. C., it collided with a bicycle on which two children were riding, viz., William J. Westberry, aged

eleven, and Leland G. Ott, aged fourteen, and as a result the children were killed. The plaintiff and chauffeur were arrested and charged with reckless driving and killing of said two boys, and defendant was notified of accident. That two suits each in the sum of fifty thousand dollars were brought in Charleston County against plaintiff by the representatives of the deceased children, alleging reckless and wanton killing. That defendant through its attorney, B. A. Moore, undertook the defense of said suits and filed answers on behalf of this plaintiff as defendant in said cases.

Complaint further alleges that the criminal charges were dropped against plaintiff but the chauffeur was indicted by the Grand Jury of Orangeburg County and the case was set for trial in May, 1937. That said B. A. Moore was present at Orangeburg, S. C., prior to said trial for the purpose of representing said chauffeur and to protect interests of plaintiff.

Complaint further alleges that the feeling was high against the chauffeur and plaintiff felt that his conviction would greatly affect the civil cases pending against him, and believing that he might be faced with large verdicts against him, in excess of ten thousand dollars provided in said policy he urged defendant to effect a settlement.

Complaint further alleges that it was first ascertained that the two cases could be settled for twenty thousand dollars and plaintiff was so advised and believing it to be to his best interests to settle he agreed to pay ten thousand dollars of that amount to have the cases settled. That the attorney for defendant company who was the attorney of record for this plaintiff in said suits was so advised and he refused to recommend the payment of ten thousand dollars on behalf of the bond company as provided in policy and unmindful of his duty to this plaintiff under said policy and to the exclusion of plaintiff's rights and taking advantage of the exigencies of the occasion and the plight of plaintiff he negotiated a settlement whereby the cases were settled

for seventeen thousand dollars and said bond company paid only seven thousand dollars and plaintiff was obliged to pay ten thousand dollars and the cases were settled in this way on July 1, 1937.

Complaint further alleges that by refusing to pay the sum of ten thousand dollars provided in policy plaintiff, rather than take the risks of large judgments being recovered, was forced and coerced to enter into an unfair settlement whereby defendant escaped its full liability and plaintiff was obliged to pay three thousand dollars more than his lawful share of settlement. Complaint further alleges that said settlement was made oppressively and in bad faith with a view of protecting the interests of the bond company rather than plaintiff, and in taking unfair advantage of the exigencies of the situation caused injury to plaintiff of three thousand dollars with interest from July 1, 1937, at six per cent., for which he demands judgment.

In that this appeal is from an order of nonsuit, granted of course, at the conclusion of the testimony of plaintiff-appellant, we deem it unnecessary to refer to answer of defendant-respondent.

The case came on for trial, and before the selection of a jury was entered upon, respondent made a motion to require appellant to elect whether he would proceed to trial upon the cause of action to recover money alleged to have been paid under duress or oppression, or upon the cause based on overreaching, bad faith, fraud or deceit.

The trial Judge ruled that there was no reason for an election; that the only cause of action stated was for duress and oppression—"having to pay money under duress," and that was the bad faith or fraud alleged against respondent, "in forcing him to do that"; that no deceit was alleged.

We think it is unnecessary to go into the testimony other than that surrounding the settlement of the civil suits brought by the administrators of the two youths killed.

The testimony discloses that Mr. B. Allston Moore was the attorney for the respondent, and filed answer on behalf of appellant in these civil cases.; that as the liability of the respondent under the policy of insurance was only ten thousand dollars, Mr. W. C. Wolfe, attorney at Orangeburg, who was representing appellant and his chauffeur in the criminal proceedings, was consulted by appellant to protect his interest for any amount over such liability; that appellant urged respondent to settle the damage suits; that the criminal case against appellant's chauffeur was set for trial at Orangeburg, S. C., in May, 1937; that just before the trial Mr. Moore went to Orangeburg to assist Mr. Wolfe in the criminal defense; that appellant was unwell and unable to go to Orangeburg; that being faced with two serious damage suits and the possibility of a conviction of his chauffeur, his main witness, appellant, through Mr. Wolfe, called on respondent to settle the civil cases; that appellant and Mr. Moore were told by Mr. Wolfe that he thought the cases could be settled for twenty thousand dollars, appellant and respondent each to pay ten thousand thereof, to which appellant agreed; that respondent refused to pay the full amount of its coverage; that at the instance of Mr. Wolfe, negotiations were then begun by Mr. Moore which resulted in a settlement of seventeen thousand dollars, of which appellant was to pay ten thousand dollars, the same amount he would have paid had respondent agreed to the original proposed compromise settlement of twenty thousand dollars; that upon reaching the agreement to settle as above stated, the criminal case against appellant's chauffeur was continued.

Following the seventeen-thousand-dollar settlement, appellant's chauffeur was given a suspended sentence.

The final agreement to settle was in the early part of May, 1937, and the settlement was completed on July 1, 1937, during all of which time appellant knew that respondent was paying only seven thousand dollars of the a g r e e d amount. Respondent was not importuning appellant to settle,

and avoid what appeared to be a certainty, the conviction and sentence for manslaughter of appellant's chauffeur; the appellant was urging respondent to settlement.

We are not here confronted with a case where a settlement could be had within the coverage, and thus save the appellant harmless, or where the insured was compelled to pay out a greater amount than he was willing to pay, and/or a greater amount than he would have been compelled to pay except for the refusal of the insurer to pay the full amount of its coverage. The insured (appellant) paid the identical amount he would have paid under a setlement negotiated by his personal counsel if the insurer (respondent) had acceded to his first demand; and the fact that respondent through its counsel succeeded in getting a reduced amount of settlement cannot concern appellant when he was fully advised, as he was, with the terms of the settlement, and proceeded to consummate it.

We are unable to perceive a scintilla of evidence of duress and oppression. The settlement was the culmination of the efforts in this direction of Mr. C. J. Baker, a personal friend and representative of appellant, who went to Orangeburg in May, 1937, at the time appellant's chauffeur was scheduled for trial on the criminal side of the Court, and carried a certificate of the illness of appellant; and of Honorable W. C. Wolfe, the personal counsel of appellant. And at that time it was proposed by these gentlemen that appellant pay ten thousand dollars towards the settlement, to which appellant agreed. As aforesaid, through the efforts of counsel for respondent a settlement was effected whereby appellant paid only ten thousand dollars as his portion thereof.

The limit of respondent's liability was ten thousand dollars, that of appellant ninety thousand dollars, potentially; and the probability of his chauffeur having to serve a term in prison. While no doubt the payment of the ten thousand

dollars by appellant was under a form of "duress and oppression", its source was other than this respondent.

In the case of *In re Nightingale's Estate,* 182 S. C., ██ 527, 189 S. E., 890, 897, the opinion quoted with approval from 14 Cyc., 1123, "that duress is 'a condition of mind produced by improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or form a contract not of his own volition.' " It is also stated in the cited case that "whether or not duress exists in a particular case is a question of fact to be determined according to the circumstances of each case."

We are unable, as aforesaid, under the circumstances of this case, to find any evidence that respondent forced appellant to settle by paying ten thousand dollars, and therefore the trial Judge properly granted respondent's motion for nonsuit.

Affirmed.

Mr. Chief Justice Stabler, Messrs. Justices Bonham and Fishburne and Mr. Acting Associate Justice G. Dewey Oxner concur.

Mr. Justice Carter did not participate on account of illness.