The RESOLUTION TRUST CORPORATION as Conservator for Cooper River Federal Savings Association and as Receiver of Cooper River Federal Savings Bank, Plaintiff,

v.

PALMETTO FORT OF MT. PLEASANT, a Limited Partnership, Palmetto Resources, Inc., Residual Resources, Inc., and Harriet Romano, Defendants.

Civ. A. No. 2:92–1743–18.

United States District Court,
D. South Carolina,
Charleston Division.

Aug. 26, 1993.

G. Dana Sinkler, Charleston, SC, for plaintiff.

Donald J. Budman, Lawrence E. Richter, Jr., Charleston, SC, for defendants.

## ORDER

NORTON, District Judge.

This matter is before the court upon plaintiff's motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff seeks summary judgment as to all defenses and counterclaims of the defendants.

## I. BACKGROUND [1]

This matter involves a Note and a Construction Loan Agreement (hereinafter "Construction Agreement") executed by Cooper River Federal Savings Bank [2] (hereinafter "Cooper River" or "plaintiff") and defendants on June 24, 1988 and the later Note and Mortgage Modification and Extension Agreements (hereinafter "Modification Agreement(s)") executed by Cooper River and defendants on March 23, 1989 and February 7, 1990.

On June 24, 1988, Cooper River and defendants closed the construction loan which is at issue in the instant foreclosure action. The first interest payment under the terms of that original note and mortgage was due on December 31, 1988. The defendants asked that Cooper River allow interest due through February 28, 1989 in the amount of $108,885.47 to be capitalized and paid from the undisbursed proceeds of the loan and that the maturity date of the loan be extended to March 24, 1992. Cooper River agreed to these requests and the defendants executed and delivered a Modification Agreement on March 23, 1989. At the same time, Harriet Romano executed a personal Continuing Guaranty Agreement. These documents were executed by Romano, in her attorney's office in New York, on behalf of herself and the defendants. The New York attorney, Dan L. Goldwasser, of the firm of Solinger, Grosz & Goldwasser, then wrote Cooper River a letter of opinion attesting to the validity and enforceability of the loan documents and stating, among other things:

> [H]arriet R. Romano is legally competent to guarantee the Borrower's obligations under the Loan and Mortgage and has duly executed the Continuing Guaranty Agreement, dated March 23, 1989....

Thereafter, from July 31, 1989 to January 12, 1990, Cooper River and defendants negotiated potential arrangements to continue to fund the loan. On January 12, 1990, no agreement having been reached, Cooper River advised foreclosure would be instituted if past due interest was not current by January 26, 1990.

As a result of the potential foreclosure, a second Modification Agreement was executed on February 7, 1990 in the office of Ms. Romano's attorney, William Ackerman. The second Modification Agreement recited *inter alia*, that:

(1) Interest totalling $154,148.12 was past due;

(2) The outstanding principal balance was $1,918,700.14;

(3) The Note was valid, binding and enforceable in accordance with its terms;

(4) Cooper River would resume funding the loan on the condition that it receive written contracts for construction; [3]

---

1. The factual background was derived primarily from plaintiff's memoranda and exhibits in support of its summary judgment motion. Defendants did not oppose any of plaintiff's recited facts in either their opposing memorandum or at the hearing before this court.

2. Cooper River Federal Savings Bank was formerly known as Cooper River Federal Savings & Loan Association.

3. Although not critical to the discussion that follows, it should be noted that the defendants concede that no written contracts for construction were ever submitted as stated in the Modification Agreement as a prerequisite to disburse-

(5) Except as modified, all other conditions of the original loan agreement should remain in full force and effect; and

(6) "The borrower and the Guarantors acknowledge that none of them has any claim of offset, defense, or cause of action of any nature against the Lender which would impair or in any way reduce or diminish their respective liabilities to the Lender pursuant to the Note and the Loan Agreement and that none have any claim or cause of action of any nature against the Lender including, without limitation, any claim based upon any act or omission of the Lender relating to the loan evidenced by the Note or the administration thereof."

Defendants failed to comply with the terms of the executed agreement and plaintiff initiated a foreclosure action in state court. Plaintiff moved for summary judgment in the state court action prior to the removal of this case to federal court, as to all defenses and counterclaims of defendants, and in the alternative, sought to bifurcate the proceeding and refer the plaintiff's foreclosure action to the Master-in Equity. A hearing was held on Thursday, January 9, 1992. By order dated February 12, 1992, the Honorable William T. Howard, South Carolina Circuit Court Judge, denied plaintiff's motions for summary judgment, bifurcation and reference.

Plaintiff has now brought before this court another motion for summary judgment on all defenses and counterclaims of defendants.

## II. AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendants have interposed three (3) affirmative defenses to plaintiff's action for foreclosure and eight (8) counterclaims. The affirmative defenses consist of allegations that:

(1) The Continuing Guaranty Agreement executed by Romano and the Modification Agreements entered into between Cooper River and defendants were executed under duress and are null and void.

(2) The documents which form the basis of plaintiff's complaint are void for lack of consideration.

(3) The note and mortgage sought to be foreclosed are void for lack of consideration.

The counterclaims consist of allegations that:

(1) Cooper River breached its contract with the defendants by failing to comply with the Construction Agreement.

(2) Cooper River breached its contract with the defendants by failing to comply with the Construction Agreement and accompanied this breach by the fraudulent act of requiring defendants to obtain further and unnecessary documentation which plaintiff knew or should have known defendants could not procure.

(3) Cooper River breached the common law implied covenant of good faith and fair dealing by failing to fund the project; requiring the defendants to enter into Modification Agreements; requiring Romano to execute a personal guarantee; raising the interest on the construction loan; requiring defendant to cease work; using fraud and artifice in its dealings with defendants.

(4) Cooper River breached the covenant of good faith and fair dealing imposed by the Uniform Commercial Code, S.C.Code Ann. § 36–1–203 (Law.Co–Op.1976 as amended).

(5) Defendants executed documents as a result of economic duress.

(6) Cooper River, by its actions, tortiously interfered with defendants' potential contractual relationship with a home builder.

(7) Cooper River orally assured Romano that it would deposit funds in Palmetto Fort's account which Romano apparently intended to place in her personal account with another bank and failed to make the deposit, resulting in Romano overdrawing her personal account.

---

ments. The defendants admit that they did not comply with the agreement. They contend, however, that a good faith effort was made to comply with the Modification Agreement and that bids, instead of written contracts, were submitted.

Apparently, defendants contend that these bids should have been sufficient to satisfy the terms of the agreement since they stated at oral argument that, as a practical matter, it was impossible to give Cooper River signed contracts.

(8) Cooper River was negligent in most of the particulars enumerated in counterclaims (1)–(7).

## III. SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact...." Fed. R.Civ.P. 56(c). In evaluating a motion for summary judgment, this court must view the record in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). The judge is not to weigh the evidence himself but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party is entitled to judgment as a matter of law if the non-moving party fails to make a sufficient showing on an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleading, Fed.R.Civ.P. 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

The non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.' [Cite omitted]. 'The mere existence of a scintilla of evidence in support of [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [the non-moving party].' [Cite omitted].

*Catawba Indian Tribe v. South Carolina,* 978 F.2d 1334, 1339 (4th Cir.1992). *See also Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985) ("Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes"). However, "[w]here states of mind

are decisive as elements of a claim or defense, summary judgment ordinarily will not lie." *Overstreet v. Kentucky Central Life Ins. Co.,* 950 F.2d 931 (4th Cir.1991).

## IV. EFFECT OF STATE JUDGES' ORDERS

■ In *Thornton v. Cessna Aircraft Co.,* 703 F.Supp. 1228 (D.S.C.1988), the court stated:

Whether rulings of one district judge become binding as 'law of the case' upon subsequent district judges is not a matter of rigid legal rule, but more a matter of proper judicial administration which varies with the circumstances so that it may sometimes be proper for a district judge to treat earlier rulings as binding, sometimes not. Similarly, an interlocutory state court ruling prior to removal is subject to reconsideration by a federal court and, while to be treated with respect, is neither final nor conclusive.

*Id.* at 1231 (citations omitted) (emphasis added).

### A. Judge Howard's Order Denying Plaintiff's Motion for Summary Judgment

■ The prior state court order of Judge Howard denied plaintiff's summary judgment. Plaintiff submits that Judge Howard's order failed to properly take into consideration the affect of the Note and Mortgage Modification Agreements which, as a matter of law, it argues operated as a bar to the claims defendants are asserting. This court has carefully reviewed Judge Howard's order and finds that it is legally erroneous on the issue of waiver. Thus, as seen below, this court will grant summary judgment in favor of plaintiff on any defenses or counterclaims of nonenforceability, lack of consideration or duress because this court finds that defendants waived those claims by signing the Modification Agreements. Judge Howard's prior order, however, did not specifically address the *D'Oench* doctrine. This court will therefore proceed on its own accord on this issue.

### B. Judge Fields' Order Requiring Defendants to Accept the Late Reply to Defendants' Amended Answer and Counterclaim

▮ Prior to removal to federal court, plaintiff moved for an order, pursuant to S.C.R.C.P. 6(b),[4] requiring the defendants to accept plaintiff's untimely responsive pleading to defendants' amended answer and counterclaim, and further to preclude the defendants from seeking a default judgment against the plaintiff. That relief was granted by order of Judge Richard E. Fields, South Carolina Circuit Court Judge.

Defendants now argue that Judge Fields' order was legally erroneous and that plaintiff should be precluded from summary judgment relief because of its default status, stating:

> In addition to the grounds stated at the time of oral argument, the Defendants rely on Plaintiff's failure to timely reply to the Amended Answer and Counterclaim as precluding Plaintiff from being entitled to the relief now sought. In addition, Defendants rely upon the same grounds as requiring that judgment be entered in favor of Defendants on the Counterclaims, in that Plaintiff is, and has been, in default.

Defendants' Additional Grounds in Opposition, p. 1.[5] Defendants specifically argue that Judge Fields' order is erroneous because the record was void of any evidence to support the judge's finding.

At the hearing before Judge Fields, conducted on December 21, 1990, plaintiff's counsel offered neither witness nor documentary evidence. Plaintiff's counsel presented his oral argument and cited legal authorities. Defendants submitted an affidavit of default and two letters into evidence. This was the record before Judge Fields at the time of his ruling.

Defendants admit that a "trial court enjoys broad discretion in vacating a default or allowing additional time to plead." *Id.* at 2. The defendants, however, suggest that the record was insufficient to support the relief granted to plaintiff by Judge Fields. As seen below, this court disagrees.

Plaintiff's counsel's reason for the delay in the reply to the answer and counterclaim was stated to this court as follows: "the fault lies solely with counsel as to the counting of days and the interpretation of the Rules. The delay was a mere three (3) days, affording no prejudice to Palmetto Fort." Plaintiff's Reply to Defendants' Additional Grounds, p. 5.[6] Judge Fields ruled that plaintiff was entitled to file its answer to the counterclaim and required the defendants to accept that answer on the grounds that good cause was shown under the decision of *Savage v. Cannon*, 204 S.C. 473, 30 S.E.2d 70 (1944). Judge Fields stated:

> [C]ounsel docketed, served and filed his reply to the amended answer and counterclaim in accordance with what he conceived to be proper practice, albeit he was mistaken. No order of default was sought or entered by defendants and no prejudice has resulted.

Judge Fields' Order (filed January 11, 1991), p. 4. This court agrees with Judge Fields' reasoning and will proceed with its consideration of plaintiff's motion for summary judgment.

### V. ANALYSIS

In support of its summary judgment motion, plaintiff urges two arguments: (1) the defenses and counterclaims of the defendants were waived by the defendants' execution of

---

4. S.C.R.C.P. 6(b) allows that "upon motion made after the expiration of a specified period, for good cause shown, the court can permit the act to be done." S.C.R.C.P. 6(b).

5. The court held a settlement conference in this case on July 1, 1993. At that time, defendants were allowed time to file any further opposition to plaintiff's motion for summary judgment. On July 9, 1993, defendants submitted their additional grounds to plaintiff's motion for summary judgment. Plaintiff thereafter replied on July 22, 1993.

6. This court agrees with plaintiff's counsel that all relevant facts as to why there was a delay in plaintiff's reply were within his own personal knowledge. Plaintiff's counsel conveyed this information to the state court. Therefore, this court finds no lack of an evidentiary basis upon which Judge Fields made his ruling.

the Modification Agreements on March 23, 1989 and February 7, 1990; and (2) the affirmative defenses and counterclaims are also barred by the *D'Oench* doctrine. In opposition, defendant relies on the prior order of Judge Howard and urges this court to adopt it in its totality.[7]

### A. Waiver

First, plaintiff argues that all the claims forming the basis of defendants' defenses and counterclaims were negotiated, waived and settled by the Modification Agreements. Both plaintiff and defendants agree that it is well settled that the renewal of a note with the knowledge of defenses to the original document estops the obligors and operates as a waiver of any right to subsequently assert those defenses. Defendants and Judge Howard, however, state that when there is a question as to the intent of the parties, and as to the performance by the parties, the interpretation of that contract is an issue of fact for the jury. Thus, Judge Howard denied summary judgment in the prior state court proceeding, citing *Black v. Freeman*, 274 S.C. 272, 262 S.E.2d 879 (1980). *Black* did not deal with the issue of waiver; rather, it dealt only with a dispute over the interpretation and intentions of the parties under a contract. Judge Howard also stated:

> [P]laintiff claims that [d]efendants have breached the terms of the Promissory Note. Defendants claim that [p]laintiff breached the terms of the Construction Agreement. Where each party to a contract charges the other with breaching it and offers evidence in support of his contention, the issue is one for the trier of the fact. *Roberts v. Sheriff Construction Co., Inc.*, 284 S.C. 618, 328 S.E.2d 123 (S.C.App.1985).

Judge Howard's Order, p. 2. Judge Howard's statements may be correct statements of the law, but they are not applicable to the facts of this case. This court cannot agree with Judge Howard's conclusions. Executing the Modification Agreements, as seen

below, forecloses defendants' right to assert their defenses and counterclaims. Simply stated, by executing the Modification Agreements the defendants waived any rights to now complain about or question the existence of their contractual obligations.

The settled statement of law that the renewal of a note with knowledge of defenses to the original document operates as a waiver of any right to subsequently assert those defenses is directly applicable to this case. Although over one hundred years old, the principles enunciated in *Grier v. Wallace*, 7 S.C. 182 (1876), remain sound law today. In *Grier*, the surety on a renewal note given to replace a note for the purchase of slaves was held estopped from asserting the unsoundness of the slaves at the time of purchase as a defense to a suit on a renewal note. The court held the purchaser estopped because:

> [b]y giving a new note for the old one, twelve years after the purchase, with the respondent, Wallace, as surety upon the same, thereby acknowledging the former transaction as a valid one, and the consideration as a good and valuable one by a higher guarantee, to wit: security in case of failure on the part of the principal. This was a new contract, the former note having been parted with as it was extinguished.

*Id.* at 184. An annotation on this subject in 35 A.L.R. 1258, supplemented in 72 A.L.R. 600,[8] gathers numerous cases from other jurisdictions which concur with this holding. This court finds these annotations both helpful and persuasive. Typical of these cases is *Stephens v. Citizens & Southern Nat'l Bank*, 170 Ga.App. 793, 318 S.E.2d 216 (1984). In *Stephens*, the appellant signed a guaranty agreement guaranteeing payment of a note of a co-worker to C & S. The co-worker subsequently defaulted and C & S called on the guarantor. The guarantor thereupon executed a new note. Upon the guarantor's default, C & S brought suit to recover on the new note and the guarantor answered and counterclaimed setting forth defenses of fail-

---

7. Defendants' supplemental ground for opposition to plaintiff's motion for summary judgment was addressed above. *See infra* p. 513–514 (Section IV.B.; Judge Fields' Order).

8. *Renewal of bill or note as precluding defense[s] available against the original*, 35 A.L.R. 1258 & 72 A.L.R. 600.

ure of consideration and fraud. The trial court granted C & S summary judgment and the Court of Appeals affirmed, holding:

> 'The renewal of a note ... in order to obtain an extension of time for payment, done with knowledge of defenses ... works an estoppel to urge, against the subsequently executed instrument, the defenses of which the maker had knowledge at the time.'

*Id.,* 318 S.E.2d at 217 (citations omitted). All of defendants' asserted defenses, save one, existed prior to the execution of the Modification Agreements. Defendants should not have signed the Modification Agreements if they wanted to preserve their defenses to a potential foreclosure action.

■ Defendants only possible defense to the effect of this waiver is economic coercion. Even taking the facts in a light most favorable to defendants, economic coercion is not established by the facts of this case. In an annotation on the subject entitled *Economic Duress or Business Compulsion In Execution of Promissory Note,* 79 A.L.R.3d 598, cases from all over the country establish that a lender's threat to take action to enforce collection of its debt does not constitute economic coercion. Again, this court finds this annotation instructive.

> [T]hree basic elements must be satisfied in order for economic duress to exist, namely (1) a 'wrongful' act that (2) overcomes the will of a person (3) who has no adequate legal remedy to protect his interest.
>
>  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;
>
> [A]s a general principle ... there can be no duress where the threatened party consulted with counsel before yielding to the pressure exerted.

79 A.L.R.3d at 603–04.

In the case of *In re Nightingale's Estate,* 182 S.C. 527, 189 S.E. 890, 897 (1937), the South Carolina Supreme Court held that in order to establish that a contract was pro-

cured through duress, three things must be proved: "(1) Coercion; (2) putting a person in such fear that he is 'bereft' of the quality of mind essential to the making of a contract; and (3) that the contract was thereby obtained." The court further defined duress as "a condition of mind produced by improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or form a contract not of his own volition." *Id.*[9]

Both Modification Agreements were executed by the defendants in their attorneys' offices. The first one dated March 23, 1989 was executed in an attorney's office in New York. The second note was executed on February 7, 1990 in another attorney's office and the note itself attests to the enforceability of the documents. According to Ms. Romano, this document was executed over the opposition of one of her attorneys and with the recommendation of her other attorney. Romano Deposition, p. 28. Furthermore, it is clear that she signed the Modification Agreements after consulting with her attorneys and in order to forestall an imminent foreclosure; not because she was "bereft of the quality of mind essential to making a contract." *Id.* at 17, 19, 22, 25 & 29.

Accordingly, plaintiff is entitled to summary judgment as to all affirmative defenses and counterclaims based on defendants' assertion of nonenforceability, lack of consideration and duress. Thus, a grant of summary judgment for plaintiff on the basis that defendants waived their claims encompasses all affirmative defenses and counterclaims (1), (2), (3), (4), (5), (6) and (8).

## B. *D'Oench* Doctrine

■ Plaintiff next argues that defendants' affirmative defenses and counterclaims are also barred by the *D'Oench* doctrine.[10] Judge Howard's order does not address the *D'Oench* doctrine. In *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court first

---

9. This holding was reaffirmed in *Cherry v. Shelby Mut. Plate Glass & Casualty Co.,* 191 S.C. 177, 4 S.E.2d 123 (1939) and in *Phillips v. Baker,* 284 S.C. 134, 325 S.E.2d 533 (1985).

10. Since all defenses and all counterclaims, except counterclaim (7), have been disposed of in the previous discussion on waiver, the only issue remaining is whether the *D'Oench* doctrine precludes defendants' counterclaim on defamation (counterclaim (7)).

held that the Federal Deposit Insurance Corporation is not bound by agreements between borrowers and financial institutions that are not expressed in the written agreements between the parties. Defendants state that all but one of their affirmative defenses and counterclaims were based entirely on the written agreements between the parties. Defendants admit that counterclaim (7) involves an alleged oral misrepresentation on the part of Cooper River.[11] This court also finds no written evidence to support a claim of defamation in this case and to thereby avoid the application of the *D'Oench* doctrine. This court further finds that there is simply no evidence that would prevent the application of the *D'Oench* doctrine to the defamation counterclaim. Thus, summary judgment as to counterclaim (7), defamation, is also granted in favor of plaintiff.

## VI. AMOUNT OF DEBT OWED PLAINTIFF

Plaintiff has requested that, upon a grant of summary judgment, this court determine the amount of defendants' debt owed in accordance with the provisions of S.C.Code Ann. § 29–3–630 (Law.Co-op.1976 as amended), and order the sale of the mortgaged premises to be applied to such debt. Section 29–3–630 states:

No sale under or by virtue of any mortgage or other instrument in writing intended as security for a debt, conferring a power upon the mortgagee or creditor to sell the mortgaged or pledged property while such power remains of force ..., shall be valid to pass the title of the land mortgaged **unless the debt for which the security is given shall be first established by the judgment of some court of competent jurisdiction** or unless the

amount of the debt be consented to in writing by the debtor subsequently to the maturity of the debt, such consent in writing to be recorded in the office of the register of mesne conveyances or clerk of court where the mortgage or other instrument in writing given to secure such debt is or ought to be recorded....

*Id.* (emphasis added). Section 29–3–650 further states:

The court may also render judgment against the parties liable for the payment of the debt secured by the mortgage and direct at the same time the sale of the mortgaged premises. Such judgment so rendered may be entered and docketed in the clerk's office in the same manner as other judgments. Upon the sale of the mortgaged premises the officer making the sale under the order of the court shall credit upon the judgment so rendered for the debt the amount paid to the plaintiff from the proceeds of the sale.

*Id.* at § 29–3–650.

In its complaint, plaintiff prayed that this court grant it judgment against defendants in the following amounts:

| | |
|---|---|
| Principal balance as of 9/17/90 | $2,058,617.12 |
| Accrued interest as of 9/17/90 | 182,756.65 |
| TOTAL as of 9/17/90 | $2,241,373.77 |

Complaint, p. 6. Plaintiff is directed to submit to this court a figure representing interest that has accrued to the present date, including the rate of interest employed in this computation.[12] The court will then enter judgment in the appropriate amount and order the mortgaged property sold.

Plaintiff has further requested in its complaint an award of attorneys' fees and costs.[13] Plaintiff is also directed to submit an amount for these expenses for the court's consideration.

---

**11.** The claim for defamation arises out of the action of NationsBank in bouncing Romano's personal checks and is based entirely on an alleged oral agreement between Cooper River and Romano. *See infra* p. 512 (description of counterclaim (7)).

**12.** In its complaint, plaintiff stated that interest accrues as provided and at the rate as set forth in the Note. Plaintiff is directed to indicate the specific interest rates relied upon in its computations submitted to this court.

**13.** The Note provides: "All parties liable for the payment of this Note hereby agree to pay the holder hereof a reasonable attorney's fee for the services of counsel employed after demand or default to collect this Note...." June 24, 1988 Note, p. 2. Plaintiff is directed to provide any other documentary or authoritative sources relied upon as a basis for an award of attorneys' fees and costs.

### VII. CONCLUSION

It is therefore,

**ORDERED,** that plaintiff's motion for summary judgment as to all affirmative defenses and all counterclaims be **GRANTED.**

**ORDERED,** that plaintiff submit to the court, for its consideration, appropriate amounts representing the debt owed, attorneys' fees and costs. It is further

**ORDERED,** that the mortgaged premises will thereafter be sold (following this court's determination of the debt owed plaintiff and the rendering of a judgment against defendants for that amount) and the sale proceeds applied to such debt, with plaintiff preserving its right to seek a deficiency judgment if necessary.

**AND IT IS SO ORDERED.**